*E. F. Ritter*, for appellees.

---

## Rowe and Another *v.* Beckett and Another.

Trusts and Powers.—A railroad company conveyed by deed forty-four tracts of land, each described, numbered, and valued, to trustees, to secure the payment of bonds, issued by the former, and put upon the market to raise money, reserving the power to sell any portion of the land at its valuation; and, upon the surrender by the company to the trustees of bonds equal in amount to the land sold, the latter were empowered to convey in fee.

*Held*, that this was a power coupled with an interest, and required only a substantial compliance with its terms.

Same.—*Practice*.—The deed from the trustees passed the legal title, and the equities of the plaintiff could not be inquired into in an action under the code for the "recovery of real property," on a complaint averring the *legal* right of the plaintiff to the possession.

Conveyance.—A deed in which the grantor uses the words "release, remise, and forever quit claim," passes the fee to the alienee.

Adverse Possession.—The possession of the grantor is not adverse to the title of his grantee.

Champerty.—The conveyance of land, pending a suit to set aside a deed

 

therefor, if made to one not having any connection with the action, or knowledge of it, is not void for champerty.

APPEAL from the Delaware Circuit Court.

GREGORY, J.—Suit by the appellants against the appellees to " recover real property." The complaint avers that the plaintiffs "are the owners in fee simple and entitled to the possession" of the land in controversy; and that the defendants hold possession of the same without right.

The defendants answered by the general denial. Beckett answered, that he was the owner of the land, setting forth a deed of conveyance thereof from Thomas Corwin and Thomas J. Sample to James Sample, and a deed from the latter to Beckett. The deed from Corwin and Sample to James Sample was a conveyance made under a power contained in a deed of trust from "The Cincinnati, New Castle and Michigan Railroad Company." The plaintiffs replied by the general denial and averring that the deed from Corwin and Sample to James Sample was void.

Trial by the court; finding for the defendants, and that Beckett was the equitable owner and had the legal title to the land. The plaintiffs moved for a new trial. The court below overruled the motion. A bill of exceptions contains the evidence.

The trust deed from the railroad company to Corwin and Sample was executed in 1853, and conveyed to them forty-four tracts of land (each of which was described, numbered, and valued), in trust, to secure the payment of bonds issued by the company and put upon the market. The deed contained the following :—"And it is hereby expressly agreed and understood that the said party of the first part reserves the right to sell any portion of the property herein at a price not less than the sum herein named as the appraised value thereof, or a proportionate price for any portion of any of the said several pieces of property ; and whenever the said party of the first part, having made such sale, shall purchase and surrender to the said parties of the second

part or their successors in said trust, to be cancelled, an amount of the bonds herein specified and designated to be secured by this deed of trust, equal to the appraised value of any portion of said property as herein specified, or of a proportional part of the appraised value of any one of said several pieces of property, then the said party of the second part or their successors in said trust shall execute and deliver to such person or persons as the said party of the first part shall designate, a deed in fee simple for such portion of said property."

The deed from Corwin and Sample to James Sample, executed in July, 1856, contains among others the following recitals:—"*And whereas* the corporate name of the said Cincinnati, New Castle and Michigan Railroad Company has been legally changed to that of the Cincinnati and Chicago Railroad Company, and which said Cincinnati and Chicago Railroad Company is now legally vested with all the rights which belonged to the said Cincinnati, New Castle and Michigan Railroad Company: *And whereas* the said Cincinnati and Chicago Railroad Company have sold a tract of land included in the property conveyed as aforesaid by the said Deed of Trust, and hereinafter described, and have surrendered to the said Thomas J. Sample and Thomas Corwin to be cancelled, an amount of said bonds equal to the appraised value of the said land as specified in the said Deed of Trust, to wit, six thousand dollars, and having designated the said James Sample as the person to whom the deed of conveyance of the said lot shall be executed and delivered," &c.

The deed from James Sample to Beckett was executed in November, 1856. In 1857, Rowe commenced proceedings in the Delaware Circuit Court to foreclose the deed of trust. A decree was entered in June, 1860, as follows:—"And it is ordered, adjudged, and decreed by the court that, unless the said defendant, The Cincinnati and Chicago Railroad Company, pay and satisfy said sums and costs, within thirty days herefrom, the sheriff of Delaware county pro-

Rowe and Another *v.* Beckett and Another.

ceed to advertise and sell, as other lands are sold on execution, giving at least thirty days notice in two newspapers of good circulation in the State of Indiana, the following real estate, or so much thereof as may be necessary to pay and satisfy said judgments, interest, and costs, that is to say, [Here the description of all the lands and town lots, as set out in the deed of trust, is inserted in the decree, except No. 8.] and on the sale thereof according to law, and the payment of the purchase money, that said sheriff execute a good and sufficient deed in fee simple to the said purchasers, and that the equity of redemption of said defendant, the said Cincinnati and Chicago Railroad Company, and all others claiming under or through her after the date of the execution of said deed of trust to Corwin and Sample, except such lands as have been purchased with bonds secured by said deed of trust, be and the same shall be thenceforth forever barred and foreclosed in and to all said premises so sold and conveyed by said sheriff; that a copy of this decree duly certified by the clerk of the Delaware Circuit Court, under the seal of said court, be, and the same shall be, sufficient authority to said sheriff to execute said decree. And it is ordered that if said premises do not sell for a sum sufficient to pay and satisfy said judgments, interest and costs, accrued and to accrue, said plaintiffs have execution to collect the residue. It is further ordered that the foregoing described lands be sold in parcels."

Beckett was not a party to this decree, unless he was included in the description of "all persons holding bonds or otherwise interested in the trust." He was not a party holding bonds. Was he otherwise interested in the trust? If the deed from Corwin and Sample to James Sample vested in the latter the legal as well as the equitable title in and to the land in controversy, then Becket had no interest in the trust. By the conveyance the land therein alienated was taken out of the hands of the trustees, and from thence ceased to be any part of the trust.

The exception in the decree of "such lands as have been

purchased with bonds secured by the deed of trust" takes them out of the operation of the entire decree. Any other construction would make the exception meaningless. To say that the exception was confined to the foreclosure, and that it did not extend to the order of sale, is to make it amount to nothing.

It is claimed that the deed from Corwin and Sample to James Sample is void for the want of a strict compliance with the terms of the power in the deed of trust under which it was made. There was no evidence offered on the trial as to the circumstances attending the execution of the deed, other than the recitals contained in it. The first inquiry which meets us at the threshold is this: is the power in the deed of trust under which the deed in question was executed, a naked power, or one coupled with an interest? The legal estate in the land was conveyed by the railroad company to the trustees. The power of sale was reserved to the company as mortgagor; the trustees were empowered to make the conveyance on the compliance by the company with the conditions specified in the power.

In *Hunt* v. *Rousmanier*, 8 Wheat. 174, Chief Justice MARSHALL thus defines what is meant by "a power coupled with an interest:" "Is it an interest in the subject on which the power is to be executed, or is it an interest in that which is produced by the exercise of the power? We hold it to be clear, that the interest which can protect a power after the death of a person who creates it, must be an interest in the thing itself. In other words, the power must be engrafted on an estate in the thing." After stating that a power to A. to sell for his own benefit would not give him an interest, nor would it if his power was to sell for the benefit of B., he adds: "A power to A. to sell for the benefit of B., engrafted on an estate conveyed to A., may be exercised at any time, and is not affected by the death of the person who created it. It is, then, a power coupled with an interest, although the person to whom it is given has no interest in its exercise. His power is coupled

with an interest in the thing which enables him to execute it in his own name, and is, therefore, not dependent on the life of the person who created it."

The trust deed containing the power conveyed to Corwin and Sample the legal estate in the land, and enabled them to make the conveyance in their own names; and, therefore, the power to do so was within the meaning of the phrase, "coupled with an interest."

Mr. WASHBURN, in his work on Real Property, in speaking of these trust mortgages, says: "It is uniformly held wherever they have been adopted, that such deeds vest in the trustee an actual legal estate and not a mere mortgagee's lien." 2 Washburn on Real Property (3d ed.), 80 § 11.

It is said, in *Rowan* v. *Lamb*, 4 Greene, 468, "*prima facie*, plaintiff's exhibits showed him to be an owner of the property. He claimed title under McKee by virtue of a deed of trust, executed in August, 1842, to Glasgow and Collier, for the benefit of James Harrison, a creditor. Under these trustees, who were not only vested with power to sell, but also with the legal title, the plaintiff appears by his exhibit in the light of an innocent purchaser. Where trustees are thus vested with the title as well as the power, it is not necessary to show that strict compliance with the directions of the power, as it would be if the power was not coupled with the title."

In *Reece* v. *Allen*, 5 Gilman (10 Ill.), 236, CATON, J., in speaking for the court, says:—"The only remaining question is whether the grantee of the trustee was bound to show that the conditions of the trust deed had been complied with. This precise question was decided by the Supreme Court of Appeals of Virginia, in the case of *Taylor* v. *King*, 6 Munf. 358; and also, in *Harris* v. *Harris, ib.* 367. Indeed, in the former case the court went further, and decided that the grantee of the trustee should recover in ejectment, although the jury had specially found that the trustee and purchaser were both guilty of fraud in the transfer. We do not hesitate to agree with the court, that

the conveyance passed the legal title to the estate, and that it did not devolve upon the purchaser to show that the trustee in making the sale had complied with the conditions specified in the trust deed. If the grantee took the title in fraud of the rights of any of the parties, a court of chancery, within whose peculiar jurisdiction such questions are, would either set aside the sale, or treat him as trustee and compel him to perform the trust."

In *Lessee of Bayard* v. *Colefax,* 4 Wash. C. C. 38, it is said by the court, that "the right of the surviving trustee, clothed as he was with the legal estate in fee simple, to convey the same to whom, and in what manner he might think proper, cannot be questioned in a court of law, nor can the title of his grantee be impugned, unless it be by some person having a better legal title in himself to oppose to it."

If these authorities enunciate the law, it seems to us clear that the deed from Corwin and Sample, as trustees, to James Sample, vested in the latter the legal title to the land in question, independent of the recitals in it. It is true that the code has abolished all distinction between law and eqity, but it will hardly be contended, under the forms of pleading adopted in the case under consideration, that the plaintiffs below could resort on the trial to an equitable right of having the deed made by the trustees set aside for a failure to comply with the conditions contained in the power.

A defendant in an action for the recovery of real property, under the general denial, may show any legal or equitable defense he may have. 2 G. & H. 283, sec. 596. But the plaintiff in his complaint must state the facts constituting the cause of action, in plain and concise language, without repetition, and in such manner as to enable a person of common understanding to know what is intended. 2. G. & H. 70, sec. 49, cl. 2. And when the allegation of the claim to which the proof is directed is unproved, not in some particular or particulars only, but in its general scope and meaning, it is not to be deemed a variance, but a failure of proof. 2. G. & H. 116, sec. 96.

The complaint in this case avers that the plaintiffs are the owners in fee of the land; proof that they were the equitable owners, and as such had the right to have the deed from the trustees set aside for a failure to comply with the conditions of the power, would not be a variance, but a failure of proof, under the code.

Under a complaint like this, the plaintiff can only recover on a legal title to the possession paramount to the legal or equitable title of the defendant. In *Stehman* v. *Crull,* 26 Ind. 436, it was held, that "the action 'to recover the possession of real property,' under the code, where the complaint is on the legal title, takes the place of the old action of ejectment, and the plaintiff must show a legal title to the possession before he can recover." The appellees had the right to offer the deed from the trustees, to show that the legal title to the land was not in the appellants, whose title was derived from the sheriff's sale made under the execution issued on the decree of foreclosure.

In *Bank of the United States* v. *Benning,* 4. Cranch, C. C. 81, it was held, that if the deeds were offered only to show the transmission of the legal title, the truth of the recitals need not be proved *aliunde.*

We think the recitals in the deed from the trustees were *prima facie* proof of the matters therein stated, and a majority of the court rule that they are sufficient to uphold the conveyance to James Sample. It has been seen that the power vested in the trustees to convey was a power coupled with an interest; in such a case the law only requires a substantial compliance with the terms of the power.

The surrender to the trustees, to be cancelled, of bonds secured by the deed of trust, to the amount of the valuation of the land conveyed, was the substantial thing provided for; and this we think the recitals show was done. It is claimed that the recitals do not show that the bonds surrendered were ever put in circulation.

We think that the legal presumption arising from the

transaction as it appeared in evidence was, that the bonds described in the trust mortgage were sold by the railroad company. It is true, that the deed of trust was executed before the bonds had a legal existence, but the entering upon the execution of the trust shows that bonds were sold; what amount does not, however, appear. It is fair to presume, nothing appearing to the contrary, that the trust deed accomplished its purpose. Indeed, it is difficult to see how bonds could be surrendered to be cancelled that never had any vitality. If the bonds were put in circulation, it could make no difference to the holders thereof how that portion of them which was surrendered was obtained by the railroad company. The holders of the other bonds had no interest whatever in that matter. The cancellation left them with the same security for their debt as they had before. When six thousand dollars worth of the land was conveyed by the trustees, just that amount of bonds was cancelled, leaving the residue of the lands as a security for that much less of the mortgage debt.

It was urged in argument, that the deed from the trustees passed no title to James Sample, because it was merely a release. The effective words of conveyance used in this deed are these:—" do hereby release, remise, and forever quitclaim unto the said James Sample, his heirs and assigns forever, all their right, title, interest and estate, legal and equitable in the following described premises, to wit," &c. This is "a good and sufficient conveyance in quitclaim to the grantee, his heirs and assigns." 1 G. & H. 260, sec. 13. A quitclaim deed is as effectual to convey land as a deed with full covenants. *McConnel* v. *Reed*, 4 Scam. 117. This was recognized as the rule in *Hamilton* v. *Doolittle*, 27 Ill. 478. Mr. WASHBURN says:—"while a deed of simple release, made to one who has neither an estate in, nor possession of, land, would be merely void, a form of deed of the nature of a release, commonly known as a 'quitclaim deed,' has long been in use in this country, and has not only been regarded, practically, as a mode of conveying an independent

title to the real property, but is by the statutes of some of the states declared to be effectual for that purpose." 3 Washburn on Real Property (3d ed.), 309.

There is a labored brief by the counsel of the appellants, citing numerous authorities, but in our view they are not applicable. The turning point of the case in judgment is, that the power in the trustees to convey is a power coupled with an interest. The cases cited relate to the execution of naked powers, not coupled with an interest. It is claimed that the deed from the trustees is void, because Jacob Carver was in the adverse possession of the land at the time of the conveyance, and had an action pending for it, to quiet his title and possession. Carver conveyed the land to the Raiload Company. His possession could not be adverse to that of his own alienee and those claiming under it.

Carver's suit was brought to rescind his conveyance. He failed in his action. It is true his suit was pending when the trustees conveyed to James Sample. Such an action could not have the effect of suspending the execution of the trust. James Sample was in no way connected with the suit, and his right could not be affected by the pending litigation. The evidence does not make a case of champerty within the rule recognized in the case of *West* v. *Raymond,* 21 Ind. 305, cited by appellants' counsel.

The judgment is affirmed, with costs.

*J. Smith, C. E. Shipley, A. Kilgore, J. Davis,* and *C. Fox,* for appellants.

*T. J. Sample* and *W. March,* for appellees.