No. 10,016.

| 83 | 275 |
| 138 | 478 |
| 83 | 275 |
| 140 | 412 |
| 83 | 275 |
| 145 | 286 |

HAYS v. CARR, ADMINISTRATOR, ET AL.

VENDOR AND PURCHASER.— *Conditional Sale.*— *Contract.*—*Mortgage.*—A grantee of lands executed to his grantor a written agreement, which, with the deed to the grantee, constituted the entire contract, in which he undertook to pay certain debts of the grantor, and upon repayment to him of the aggregate thereof within three years, with interest, to reconvey to his grantor the same lands.

*Held,* that the transaction was a conditional sale and not a mortgage.

SAME.—*Specific Performance.*—*Tender.*—A party seeking a specific performance of a contract to convey lands to him upon the payment of a certain sum must show that he has made or tendered the payment.

SAME.—*Action to Quiet Title.*—*Complaint.*—*Construction.*—*Deed.*—A complaint which, by its prayer and general structure, is plainly intended either to quiet title or cancel a deed, and not to obtain damages for the breach of a contract, if insufficient for the purpose intended, will be held bad on demurrer, though it may aver facts which would be sufficient to entitle the plaintiff to recover damages in a suit for that purpose.

SAME.—*Consideration.*—*Payment.*—*Allegation of.*—A complaint to cancel a deed and quiet title, which fails to allege payment or offer of payment of money, which it appears that the grantee has paid in consideration of the deed, is bad on demurrer.

SAME.—A complaint to quiet title, which shows that the plaintiff has no title, is bad on demurrer.

JUDGMENT.—*Estoppel.*—A judgment of a court of competent jurisdiction concludes the parties upon the point in issue, and estops the defeated party in a subsequent suit by him against the other party and those claiming through him, founded upon averments, the truth of which was in question, and which were adjudged against him, but it is of no avail upon questions which were not and could not have been litigated in the cause.

FRAUD.—*Complaint.*— A complaint, basing a right to relief on account of fraud, must aver the facts constituting it, and the application of epithets to characterize a transaction which is lawful will not be sufficient.

From the White Circuit Court.

*S. A. Huff*, *W. F. Hays* and *E. H. Brackett,* for appellant.
*A. W. Reynolds, E. B. Sellers, D. Turpie, J. A. Wilstach* and *J. W. Wilstach,* for appellees.

ELLIOTT, J.—The first paragraph of the appellant's complaint alleges, that on the first day of August, 1876, he was the owner of the land therein described; that on that day he executed to Benjamin D. Pettit, then in life, but since deceased, a warranty deed for the land; that at the time of the execution of the deed the grantee therein delivered to the appellant the following written agreement:

" Brookston, September 13th, 1876.  I hereby assume and agree to pay the sum of twenty-one thousand and eighty dollars as follows, to wit: The sum of $14,000 to the heirs of John Richey; $3,775 to the Second National Bank of Lafayette; $1,506 to the Lafayette Savings Bank, and $1,800 to George Chamberlain.  Should Cormacan Hays pay me the above amounts, with the interest thereon at the rate of ten per cent. per annum, within three years from this date, or cause to be paid, I hereby bind myself, heirs and administrators to make the said Cormacan Hays a good and sufficient deed to a certain tract of real estate contained in a deed of said Hays and wife to Benjamin D. Pettit, dated August 1st, 1876.

" B. D. PETTIT."

That no money was paid to appellant, nor any property re-

ceived by him from the grantee; that the land was encumbered by a judgment and decree of foreclosure in favor of Alice L. Elliott and Keltie McCoy, for $14,000; that after receiving the deed from appellant, Pettit entered into the following agreement with the holders of the encumbrances:

"Memorandum of an agreement made and entered into this 7th day of April, A. D. 1877, between David Elliott and Alice L. Elliott, his wife, and John McCoy and Keltie McCoy, his wife, of the first part, and Benjamin D. Pettit of the second part:

"The parties of the first part are the holders of a certificate issued to said Alice L. Elliott and Keltie McCoy, March 1st, 1877, by Irwin Greer, sheriff of White county, Indiana, certifying that at last said date said Alice L. Elliott and Keltie McCoy became the purchasers at sheriff's sale of the following described real estate, situated in White county, Indiana, for the sum of $15,490.62, paid by them to said sheriff, to wit:" (Here follows description of the land, which is omitted.)

"It is agreed that said certificate represents amounts payable as follows, to wit: Sheriff's costs and poundage and attorney's fees, realized by the parties of the first part . . . . . . . . . . . $   948.38
By bidding in said land . . . . . . . . . .   14,542.24
                                            _____
                                            $15,490.62

Said costs and fees are now paid by said Pettit, and he now pays to the parties of the first part $4,542.24, so as to reduce the amount due to $10,000 at this date.

"Said certificate is assigned in blank by the said parties of the first part, and placed in the hands of Chase and Wilstach as an escrow. If the said certificate is redeemed by any person legally entitled to redeem, the redemption money shall be paid out as follows: $948.38 and $4.542.24, with interest at the rate of 10 per cent. per annum thereon, to said Pettit; $10,000, and interest thereon at the rate of 10 per cent. per annum, to the parties of the first part.

" But if said property is not. redeemed, the said remaining $10,000, remaining unpaid by said Pettit, is to be provided for by him as follows, say $10,000 to be paid as follows: One-fourth

| | |
|---|---|
| payable in cash March 2d, 1878 . . . . . . $ | 2,500.00 |
| Note at one year from March 2d, 1878 . . . . | 2,500.00 |
| Note at two years from March 2d, 1878 . . . | 2,500.00 |
| Note at three years from March 2d, 1878 . . | 2,500.00 |
| | $10,000.00 |

Said notes to be payable with interest at the rate of eight (8) per cent. per annum from date, payable annually, with the privilege of paying any or all before maturity, and to provide for 5 per cent. attorney's fees unconditionally, and to be secured by first mortgage on the above described lands. Said notes and mortgage to bear date March 2d, 1878, and thereupon the assignment of said certificate to be filled up to said Benjamin D. Pettit, his assigns or legal representatives, in such a manner as to authorize him or them to receive a deed of the sheriff of White county, Indiana, for the above bescribed lands. If said Pettit desires, he may have an extension of six months beyond the maturity of said notes, on condition of his keeping the interest thereon paid, and the parties may make agreement for further extension on terms to be thereafter agreed upon. Said Pettit is to make every effort he can to have the delinquent taxes collected from the crops on said lands, and he is to make no charges for his services, nor expense about the same; but if he fails to have such collection made he shall pay one-half of said taxes, and the said Alice L. Elliott and Keltie McCoy shall provide for the other half of such taxes, one-fourth to each of the two last named. Executed in duplicate the date first above named.    DAVID ELLIOTT.

" ALICE L. ELLIOTT.
" JOHN McCOY.
" KELTIE McCOY.
" B. D. PETTIT."

Hays *v.* Carr, Administrator, *et al.*

" It is hereby agreed that the time for the payment within provided for is extended as follows :

| | |
|---|---:|
| May 1, 1878 | $2,000.00 |
| July 1, 1879 | 2,000.00 |
| July 1, 1880 | 2,000.00 |
| July 1, 1881 | 2,000.00 |
| July 1, 1882 | 2,000.00 |

All bearing interest at the rate of 8 per cent. per year from March 1st, 1878. It is supposed that such extension will give time for the prosecution of a suit for possession of the lands by John A. Wilstach, trustee ; but the said payments are to be made promptly as they may mature, without any delay occasioned by the pending of any such suit. At the close of such suit said Wilstach is to convey to said Pettit or his assigns, upon said Pettit making payment of all payments due, and executing notes and a first mortgage on said premises securing such portion of said payments as may then remain unpaid. Dated March 2d, 1878.                           DAVID ELLIOTT.

" ALICE L. ELLIOTT.

" JOHN McCOY.

" KELTIE McCOY.

" B. D. PETTIT."

That Pettit, instead of complying with the terms of his agreement to pay off the encumbrance, did buy the certificate of sale and claim to be the owner of the land. It is also alleged that there was a verbal agreement made at the time the deed was executed, wherein it was stipulated that Pettit should take a conveyance of the land for the purpose named in the written agreement, and for the further purpose of securing him against loss upon debts on which he was liable as the surety of Hays; that there was a fraudulent collusion between the appellees to secure appellant's land, and that the deed, although absolute on its face, was in fact a mortgage.

To this paragraph of the complaint separate answers were filed by the appellees. The second paragraph of the answer of each is similar, but as the relations of the parties are very

different we shall consider the answers separately. It is evi-
dent that the situation of Wilstach and of Elliott and McCoy
are the same; while that of Carr, the administrator of Pettit,
is very different. It can not be assumed that what is a good
answer for the appellants first named is sufficient as to the
administrator or heirs of Pettit; on the contrary, the situa-
tion of the parties is so essentially different that the answers
require separate consideration. We shall consider the an-
swer of Wilstach first, and as he and Elliott and McCoy
stand in substantially the same situation, what is said in dis-
posing of the ruling on his answer will apply to them.

Wilstach alleges that the mortgage mentioned in the com-
plaint was foreclosed as therein stated; that sale was made
upon the decree, and the land purchased by Alice L. Elliott and
Keltie McCoy; that they received a certificate of sale from
the sheriff; that Chase and Wilstach received the certificate
as their attorneys; that Pettit had no interest whatsoever
therein; that the owners of the decree did execute to Pettit
the written agreements set forth in the complaint; that pur-
suant to the terms of the agreement the certificate was de-
posited with Chase and Wilstach as an escrow, and so re-
mained until title was acquired by Wilstach; that Pettit, in
his lifetime, did pay to Keltie McCoy and Alice L. Elliott all
of the money due upon the decree except $8,000; that this
balance has not been paid or tendered. The paragraph under
immediate mention also contains a denial of the allegations
of the complaint, except those admitted, and all the allega-
tions relative to fraud, to verbal agreements, and like mat-
ters are, therefore, controverted. Following the denials is
the statement that, at the March term, 1878, of the White
Circuit Court, which had jurisdiction of the subject-matter
and of the parties, Wilstach instituted an action against ap-
pellant for the possession of the land, alleging title in fee;
that appellant appeared to the action and filed an answer;
that upon his application the venue was changed to Tippe-

canoe county; that a trial was had, and a final judgment rendered in favor of Wilstach.

In appears from the allegations of this answer that the issue tried in the cause wherein Wilstach was plaintiff and the appellant defendant was, whether Wilstach was or was not. the owner in fee of the land in dispute. The judgment upon that issue is conclusive against the appellant in Wilstach's favor. The answer avers, and the demurrer admits, that Wilstach was adjudged to be the owner in fee simple, and, of course, shuts out all interest or claim of the appellant. The case made by the answer is directly and fully within the rule that a judgment of a court of competent jurisdiction upon a point in issue concludes the parties. There was clearly no error in overruling the demurrer to Wilstach's answer.

Alice L. Elliott and Keltie McCoy are upon the same, or perhaps a better footing than Wilstach. They were the owners of the decree, and the beneficiaries for which he held the legal title, and the judgment in Wilstach's favor necessarily determines the question of title as to them.

The answer of Carr, the administrator of Pettit, admits the allegations of the complaint concerning the execution of the mortgage to Richey, the foreclosure and sale, the execution of the deed to Pettit, and the execution of the written agreement by him to appellant; admits also the execution of the agreements with Alice L. Elliott and Keltie McCoy; avers that Pettit paid all of the indebtedness assumed in his agreement with appellant, and that no part of the money has been paid or tendered the administrator of Pettit, nor paid or tendered him in his lifetime. All the other allegations of the complaint, except those admitted, are specifically denied. The answer contains the same allegations as to estoppel by judgment as those in Wilstach's answer.

We are satisfied that the answer of Carr receives no force from the averments concerning the estoppel by judgment. Pettit was not a party to the action, and there was no issue which would warrant a judgment estopping the appellant from

asserting his rights against Pettit or his representatives. Wilstach received title because he represented the interests of the owners of the decree, and the judgment settled nothing more than the validity of Wilstach's title. It is true that the judgment concludes the appellant so far as the title to the land is concerned, but it by no means concludes him from obtaining relief against Pettit's representatives for any breach of contract or of trust. The question whether Pettit had broken a contract or violated a trust was not in issue in Wilstach's case, and there was no adjudication upon it. A judgment is only conclusive upon such questions as were or might have been litigated in the action in which it was rendered. The interests of Wilstach and Pettit were not identical; they were in fact adverse. The success of the former did not involve that of the latter. It does not follow that because Hays can not regain title he can have no cause of action at all against Pettit's representative for a breach of contract or the violation of a trust.

Whether Carr's answer is good depends upon the matters contained in it, considered independently of the matter of estoppel.

It is contended that the deed to Pettit, although absolute on its face, was only a mortgage. If the answer did not deny the allegations of the complaint relative to the verbal agreement therein set forth we should have no great difficulty in holding with appellant upon this point. But the answer explicitly denies the allegations of the complaint upon this subject.

The appellant, by demurring to the answer, has conceded all that it properly denies, and it denies all the material averments of the complaint except such as relate to the execution of the deed and the written agreements. We are, therefore, bound to exclude from consideration all the allegations of the complaint except those last mentioned.

Taking, as we must, the deed and the written agreement executed by Pettit to appellant as constituting the contract,

we proceed to enquire and determine whether it is a conditional sale or a mortgage. It is certain that one important feature of a mortgage is lacking, namely, the existence of a subsisting indebtedness. Pettit was not taking a security for a debt due from Hays. There was no money advanced to him to be repaid. Pettit had a right to buy the land outright or to agree to sell it back to the grantor within a designated time and for a specified price. In this respect Pettit's situation was entirely unlike that of a creditor securing an existing debt, or obtaining security for a loan. The instruments on their face import a conditional sale, and not a mortgage. In *Conway's Ex'rs* v. *Alexander*, 7 Cranch, 218, this question received a careful investigation, and a transaction in its material features very like this was declared to be a conditional sale, and not a mortgage. MARSHALL, C. J., there said : " In this case the form of the deed is not, in itself, conclusive either way. The want of a covenant to repay the money is not complete evidence that a conditional sale was intended, but is a circumstance of no inconsiderable importance. If the vendee must be restrained to his principal and interest, that principal and interest ought to be secure. It is, therefore, a necessary ingredient in a mortgage, that the mortgagee should have a remedy against the person of· the debtor. If this remedy really exists, its not being reserved in terms will not affect the case. But it must exist, in order to justify a construction which overrules the express words of the instrument. Its existence, in this case, is certainly not to be collected from the deed. There is no acknowledgment of a pre-existing debt, nor any covenant for repayment." It is true of the case before us that there is no undertaking on the part of Hays to pay or refund to Pettit any money. No action for the recovery of money could have been maintained by Pettit against Hays ; for, so far as the written agreements show, there was no undertaking or promise on the part of the latter. The papers on their face show no engagement to repay the money paid out upon the debts of Hays ; nor is any subsisting debt

shown; they show nothing more than a sale of land with an agreement that within a certain time and upon specified terms the vendor may repurchase. *Prima facie*, such a contract is not a mortgage. *Cunningham* v. *Banta*, 2 Ind. 604; *Lee* v. *Kilburn*, 3 Gray, 594; *Glover* v. *Payn*, 19 Wend. 518; *Flagg* v. *Mann*, 14 Pick. 467.

It is true that courts incline to regard a transaction as a mortgage rather than as a conditional sale. Where, however, the contract upon its face shows a conditional sale, and there are no facts explaining or contradicting its terms, the courts will carry it into execution. Jones Mortg. 261. So, where the language of the contract imports a conditional sale, it devolves upon the party. alleging it to be a mortgage to show some facts changing the character of the transaction. *Henley* v. *Hotaling*, 41 Cal. 22. In the case in hand, the answer denies the existence of all the facts alleged in the complaint as explaining or changing the character of the agreement, and we can not look to them to aid us in our investigation.

Allegations of a complaint denied by an answer can not be considered in determining the sufficiency of the answer. By demurring to an answer containing denials of the allegations of the complaint the plaintiff concedes that the denials are expressive of the truth, and, in conceding this, confesses that the controverted allegations of the complaint are not true.

There is much good law in the brief of appellant's counsel, but the sweeping denials contained in the answer to which they demurred make it wholly inapplicable to the present case. The argument assumes as true matters that are denied, and, therefore, rests upon an insufficient foundation.

The answer states a complete defence, for it shows a purchase by Pettit, with an agreement to sell back within a designated period, and upon specified terms, and shows also that the appellant has not offered to buy the land within the time, or upon the terms specified. Where one is entitled to buy back land upon terms expressly specified in a contract, he must, in order to maintain his action, show a performance or tender

of performance of his part of the contract. The denial in the answer, as well as the affirmative allegations, shows that there was no performance or tender of performance.

The second paragraph of the complaint is similar to the first. It treats the transaction between Pettit and Hays as a conditional sale; avers that part only of the agreement between them was put in writing; that from the writing was omitted the agreement of Pettit to permit Hays to retain possession of the land for three years; to furnish him with money to buy a sufficient number of young cattle to stock the land; that the number required was six hundred, of the aggregate value of $30,000; that this promise was part of the consideration of the sale by appellant to Pettit. This paragraph also sets forth the same written instruments as are set out in the first paragraph, and avers that Keltie McCoy and Alice L. Elliott had full knowledge of the contract of Pettit; that they colluded with him for the purpose of enabling him to violate his contract, and for that purpose entered into the written agreements with him; that they caused a deed to be executed at the end of the year allowed for redemption to John A. Wilstach; that there was then owing them from Pettit for said conditional purchase made by him the sum of $8,000. It is charged that Pettit failed to perform his contract; that he did not furnish money to buy cattle, and did not pay off all the indebtedness assumed by him, but left unpaid more than $8,000 of the decree in favor of Alice L. Elliott and Keltie McCoy. It is not alleged, directly or indirectly, that the appellant has paid or offered to pay any part of the money paid out by Pettit, nor that he has paid or offered to pay any part of the balance due upon the decree in favor of Keltie McCoy and Alice L. Elliott. The prayer of this paragraph is as follows: "Wherefore plaintiff demands judgment, that said deed of August 1st, 1876, but executed and delivered on the 13th day of September, 1876, be decreed to be cancelled and set aside as null and void, and a cloud upon the title of the plaintiff, and that said Wilstach be required to convey

the said land to this plaintiff, and that the plaintiff's title to said property be quieted."

The appellees filed separate demurrers to this paragraph, and they were sustained.

It is very clear that no cause of action is shown against Wilstach, or Mrs. Elliott and Mrs. McCoy. The purchase by the latter at the sheriff's sale gave them a perfect right to the sheriff's certificate. It was their property. The owner of a sheriff's certificate may sell it to whomsoever he chooses, just as he may sell any other property. The agreement between Pettit and Hays had no binding force upon the owners of the sheriff's certificate. We have decided this question in the case of *Hays* v. *Wilstach*, 82 Ind. 13, and we see no reason to change our opinion. Having the right to sell the certificate, the owners had, of course, a right to sell it upon such terms as they pleased. It is evident that the sale of the certificate to Pettit gave appellant no cause of action against the owners, or their trustee Wilstach.

Fraud is to be shown by stating facts. The employment of epithets does not dispense with the statement of facts. Characterizing the conditional sale of the certificate to Pettit as fraudulent is not showing it to be so. A judgment plaintiff has undoubtedly the right to sell his judgment or his title thereunder. The judgment plaintiffs in this action were not guilty of fraud in selling to Pettit.

If it were conceded that Hays had a right to compel Wilstach to convey to him, it is very certain that he must do what Pettit would have been bound to do, and he would unquestionably have been bound to pay the money due upon the decree. One having a right to demand a conveyance of lands upon the condition that a specified sum of money shall be first paid can not compel a performance without having paid or tendered the money. There is no pretence that Hays paid or offered to pay the balance due on the decree of foreclosure entered against him.

The holder of the sheriff's certificate, by accepting money from a third person upon a sale of the certificate, does not place himself in the situation of one who accepts money in part redemption of the land. It is one thing to accept money in redemption from the judgment debtor, and another to sell to a stranger and accept money from him in payment. By selling the certificate and accepting part payment, the owners did not transform their right into a mere lien. They did not deprive themselves of a right to secure title. *Hays* v. *Wilstach, supra*.

The situation of Pettit's representatives is, as already said, materially different from that of Wilstach and the other appellees. A cause of action might well be shown against the former without showing any against the latter.

It may be and perhaps is true, that Hays would have a cause of action against Pettit's representatives for the failure to pay off the Richey judgment, but the question is whether that right of action can be made available under the present complaint. The whole tenor of the pleading shows that it is directed to securing the cancellation of the deed to Hays, and the quieting of title in appellant. It is not an action for a breach of contract, or for the violation of a trust; it is in reality an action to quiet title. It would be a violation of all rules of pleading to hold that in an action brought to quiet title or cancel a deed, and upon a complaint solely framed on that theory, and containing no claim for damages, recovery might be had for a breach of contract. A plaintiff can not declare on one theory and recover upon another. Of the many cases illustrating this doctrine, we cite a few: *Judy* v. *Gilbert*, 77 Ind. 96 (40 Am. R. 289); *Raymond* v. *Parisho*, 70 Ind. 256; *Paris* v. *Strong*, 51 Ind. 339; *Martin* v. *Cauble*, 72 Ind. 67; *Rowe* v. *Beckett*, 30 Ind. 154; *Stevens* v. *Mayor, etc.*, 84 N. Y. 296; *Degraw* v. *Elmore*, 50 N. Y. 1. A defendant brought into court to answer a complaint to quiet title can not be held to be required to defend against a claim for a breach of

a contract or the violation of a trust. Whether the appellant has or has not a right of action for the violation of a trust, or for the breach of the verbal or written contract, are questions we need not and do not decide, for they are not presented by the complaint nor involved in the judgment.

The complaint in this case must be regarded as one to cancel the deed to Hays and quiet title in the appellant. We have already seen that, as against Wilstach and the Richey heirs, Alice L. Elliott and Keltie McCoy, the complaint is insufficient, for the title in Wilstach can not be disturbed upon the facts pleaded. Waiving, for the present, the question whether, title being shown in Wilstach, the appellant could have any to quiet, we shall consider whether the complaint makes a case against Pettit's representatives for quieting the title. The effect of a judgment quieting title in Hays would be to divest the heirs and administrator of Pettit of all title to or interest in the land. *Green* v. *Glynn*, 71 Ind. 336; *Hawley* v. *Smith*, 45 Ind. 183.

Certainly, Pettit, holding a deed of conveyance and having paid more than $12,000, had some interest in the land. The theory of the complaint is, that the appellant is not bound to pay any part of the money paid out by Pettit, for no payment or offer of payment is shown. It would violate the plainest principles of equity to sustain this theory, by holding that Hays might quiet the title without paying, or offering to pay, what was actually due Pettit's representatives.

It is necessary for one who seeks to quiet title to show that he possesses title. The complaint, instead of showing that appellant has title, shows that it is in another.

Judgment affirmed.

Petition for a rehearing overruled.