Johnson *v.* Pontious.

No. 13,469.

## JOHNSON *v.* PONTIOUS.

REAL ESTATE.—*Ejectment.—Quieting Title.—Pleading and Proof.*—Where the plaintiff in an action of ejectment, or in a suit to quiet title, alleges a legal title, a recovery can not be had by proof of an equitable title.

SAME.—*Statutory Provisions.*—All the provisions of the statute in regard to actions to recover possession of real estate apply to suits to quiet title.

SAME.—*Parol Contract of Purchase.—Equitable Title.*—To constitute an equitable title to real estate under a parol contract of purchase, the claimant must show that possession was taken under the contract, and that the purchase-money was paid.

SAME.—*Specific Performance.*—A parol contract for the sale of real estate, the specific performance of which a court of equity will enforce, must be one that is complete and definite, and it must be just and fair in all of its provisions.

PLEADING.— *Complaint. — Cross-Complaint.—General Rules.*—The general rules which govern a complaint also govern a cross-complaint.

From the Fulton Circuit Court.

*M. L. Essick* and *O. F. Montgomery,* for appellant.
*J. S. Slick* and *F. H. Terry,* for appellee.

BERKSHIRE, J.—This is an action brought by the appellant against the appellee for the partition of certain real estate situated in Fulton county. The appellee answered the complaint by filing a general denial. He also filed a cross-complaint, to which the appellant answered by filing a general denial. The cause was tried by the court, without a jury, and a general finding made for the appellee. The appellant filed a motion for a new trial, which was overruled and the proper exception reserved, after which the court rendered a general judgment for the appellee.

There is but one error assigned, and that is that the court erred in overruling the motion for a new trial.

There are but two reasons assigned for a new trial: 1. The decision of the court is not sustained by sufficient evidence; and, 2. The decision of the court is contrary to law.

The main and only principal question in the case is whether or not there is any evidence to support the finding of the court. It is admitted that Solomon Pontious died on the 31st day of August, 1869, intestate, and the owner of the land in controversy and holding the legal title thereto, and that he left, as his only heirs-at-law, Isaac, Levi, Samuel, Moses, John, Edward, Joseph, Aaron and Jonathan Pontious, Hester Hoffman, Elizabeth Brown and Mary Shafer, all being sons and daughters of the decedent; that in the year 1885 Isaac Pontious, one of said sons, died intestate, leaving as his only heirs-at-law Jefferson, Isaac and Rachel Pontious, Lucetta Rupert, Louisa Gurlich, Mary Marrett and Henrietta Myers, all being sons and daughters of the decedent. A quitclaim deed, bearing date November 8th, 1869, from Edward Pontious, the appellee, to one Adam Hoffman, for the real estate in controversy, was introduced in evidence by the appellant; and also a quitclaim deed, bearing date April 13, 1886, from all of the heirs of Solomon Pontious, except the appellee and Isaac, who had deceased, and all of the heirs of Isaac, except Rachel. Adam Hoffman, the grantee of the appellee, was one of the grantors in this deed. There is no controversy but that the legal title was in the appellant at the commencement of the action, except as to one eighty-fourth, which Rachel, the daughter of Isaac, conveyed to the appellee, and which the appellant concedes was and is in the appellee.

The appellee alleges in his cross-complaint that he is the owner in fee simple of the real estate in controversy, and asks that his title thereto be quieted.

Whenever, in an action of ejectment or to quiet title, the complaint or cross-complaint alleges a legal title, a recovery

can not be had by proof of an equitable title. *Stout* v. *Mc-Pheeters*, 84 Ind. 585; *Hunt* v. *Campbell*, 83 Ind. 48; *Mc-Mannus* v. *Smith*, 53 Ind. 211; *Stehman* v. *Crull*, 26 Ind. 436; *Rowe* v. *Beckett*, 30 Ind. 154; *Groves* v. *Marks*, 32 Ind. 319.

The foregoing were cases to recover the possession of real estate, but all of the provisions of the statute in regard to actions to recover the possession of real estate apply to actions to quiet title. *Green* v. *Glynn*, 71 Ind. 336. The same general rules govern a cross-complaint that govern a complaint. *Rausch* v. *Trustees, etc.*, 107 Ind. 1; *Conger* v. *Miller*, 104 Ind. 592.

The finding of the court covered the issues joined upon the cross-complaint as well as those joined upon the complaint, and the appellee, upon the finding of the court, was as much entitled to a judgment quieting his title as he was to a judgment in the main action; and taking the issues, finding and judgment into consideration, we are of the opinion that the judgment rendered as effectually quieted the appellee's title as if it had done so *pro forma*. As the cross-complaint declared upon a legal title, and as the legal title was conceded to be in the appellant, the court should at least have found for the appellant upon the issues joined upon the cross-complaint and rendered judgment for appellant accordingly, and in finding for the appellee generally and in rendering a general judgment in his favor the court committed an error. But, upon the evidence, was the appellee entitled to a judgment in the main action?

No question of tenancy or notice was raised in the court below. The appellee defended the action upon the theory that he was the equitable owner of the land through a parol contract of purchase from his brothers and sisters and Hoffman, to whom he had theretofore conveyed his undivided interest. He claims to have made a parol contract for the land, to have entered into possession under the contract, and to have made lasting and valuable improvements thereon.

Unless there was a contract, possession taken under it, and a payment of the purchase-money, the appellee held no equitable title and could not successfully defend the action on the ground of equitable ownership. *Walter* v. *Hartwig*, 106 Ind. 123; *Barnes* v. *Union School Tp.*, 91 Ind. 301; *Hays* v. *Carr*, 83 Ind. 275; *Burns* v. *Fox*, 113 Ind. 205; *Wallace* v. *Long*, 105 Ind. 522.

Solomon Pontious, the ancestor, left twelve children, each inherited a one-twelfth of the real estate in question.

The testimony of the appellee, given as a witness in his own behalf, is as follows: " The land is in my possession; I moved on the land in 1873; it was not cleared when I went there; have lived there ever since, and now live there; I improved the land by ditching, clearing, building house and barn, planting an orchard, and otherwise; Samuel and Isaac first spoke to me about buying the land; I saw all of them I could, and wrote to the others; John, Elizabeth and Aaron were away; I was to have the land at twenty-five dollars per share, or three hundred dollars for the whole; I was to pay as soon as I could do so; I went into possession because they agreed to sell it to me; it was in the fall of 1872 when I talked with them; I never paid anything except in work; I did work for Isaac; he said I could go on the land; Samuel said my work should go on the land; nothing was ever claimed until Isaac died, which was in 1885; the 27th of July, last, was the first they ever claimed anything; the land is most all improved; I was at Bright's when the deed was there; Joseph and Levi and their wives signed the deed; I do not know why the deed was never completed; I had a talk with Isaac about it; some of the heirs helped me to build the house; they lived in the neighborhood; all of them have stayed over night with me."

On cross-examination the witness testified: " I paid the taxes on the land up to 1882; I did not feel like paying taxes after that, because I did not know what I was going to do;

when they signed the deed I told them I would give them my note and a mortgage for their shares; Moses said it was all right, just let it go; they wanted to make the deed to my wife; I had a conversation with Samuel about the deed, but none with Jefferson."

No other witness than the appellee testified as to any contract for the purchase of the real estate in controversy. It is hardly necessary to say that his testimony comes far short of proving a contract for the sale of land, such as a court of equity will recognize and enforce. It is not pretended that there was a contract with all of the heirs; some of them that were absent were written to, but there is no evidence tending to show that they received the letters or answered them. Samuel and Isaac spoke to the appellee about buying the land first, and afterwards he saw all of them that he could. He was to have the land at twenty-five dollars per share, and pay as soon as he could. Which of the heirs agreed to this arrangement is not stated, so far as we are informed from the evidence. Samuel and Isaac are the only ones that the appellee talked with, and they simply spoke to him about buying the land. The remainder of the testimony consists of general and indefinite statements, so far as it related to the contract and the persons with whom the conversations took place.

A parol contract for the sale of real estate, the specific performance of which a court of equity will enforce, must be one that is complete and definite, and must be just and fair in all of its provisions. Ikerd v. Beavers, 106 Ind. 483.

The evidence fails to show that the appellee went into possession under the contract. The evidence is, "I went into possession because they agreed to sell it to me." Because some one had agreed to sell him the land, the appellee, of his own accord, took possession of it. But, in addition to all this, not one dollar of the purchase-money has been paid, except some work done for Isaac, and no disposition or inclination shown to make payment, notwithstanding fifteen or sixteen

years have elapsed since the date at which it is claimed the contract was made.

There is no evidence to support the finding of the court, and the judgment is reversed, with costs.

