HARE v. CHISMAN ET AL.

[No. 28,808. Filed October 29, 1951. Rehearing denied December 13, 1951.]

*Ezra H. Stewart*, of Indianapolis, for appellant.

*Frank W. Morton* and *Thomas C. Tumbove,* both of Indianapolis, for appellee.

DRAPER, C. J.—The appellee, Ethel M. Chisman, brought suit against the appellant, George Hare, and the appellee, Walter Hare, to partition certain real estate. George Hare answered in denial under Rule 1-3, and filed a cross-complaint alleging fee simple title in himself by adverse possession, and praying that his title be quieted. The appellee replied in denial and filed an additional paragraph alleging she was a cotenant with the appellant. She later also pleaded the fifteen and twenty year statutes of limitation.

The trial court found that Ethel M. Chisman, Walter Hare and George Hare, as heirs of Alice Myrtle Hare, deceased, were tenants in common, each owning an undivided one-third interest in the real estate; that the real estate was not susceptible of division and that the same should be sold; and found against the appellant, George Hare, on his cross-complaint to quiet title. The only questions properly presented are (1) whether the decision of the court is sustained by sufficient evidence, and (2) whether it is contrary to law.

The evidence discloses that in 1904 one Alice Myrtle Willis married the appellant George Hare. The appellee, Ethel Chisman, is the daughter by former marriage of said Alice Myrtle Hare. In 1908 a son, Walter Hare, was born to the marriage. The family lived together and on October 26, 1910, the appellant and Alice Myrtle Hare entered into a written contract for the purchase of the real estate described in the complaint. The property was then unimproved  The contract provided for weekly payments of One Dollar until the total price of $350 was paid, in which event a warranty deed was to be given to the purchasers by the sellers. It was recorded on January 6, 1911. Both George and Alice

Myrtle Hare were employed, the latter working for four years or longer at a laundry. Alice Myrtle Hare paid the largest part of the money for the property, the appellant informing her that if she built any houses on the premises it would be "on her own hook;" that she would have to pay for it herself; and he washed his hands of it. She assumed full control of the collection of rents and management of the property. On June 19, 1914, the sellers conveyed the property to Alice Myrtle Hare by deed which was recorded on June 22, 1914.

Shortly after the purchase of the lot a three-room house was moved onto the lot, the sum of $200 being borrowed from the parents of Alice Myrtle Hare to accomplish this. The property was later mortgaged for the purpose of building an additional house, the appellant joining in the execution of the mortgage as Alice Myrtle Hare's husband. She died intestate on October 11, 1918, and left as her sole heirs the appellant, George Hare, the appellee Ethel M. Chisman, and the appellee Walter Hare.

The survivors continued to live on the property for a time. There was no administration of Alice Myrtle Hare's estate. The children were minors, and the appellant assumed control of the real estate. He collected the rents, paid taxes and assessments, and paid off the obligations of his deceased wife, which consisted of the balance then due on the mortgage above referred to and the $200 cash loan. From the time of her mother's death to the date of the filing of her complaint in this case the appellee visited back home every year, returning in all about fifty times, and on those occasions always went to see the appellant, and several times asked him how the property was, and he would always say "about the same." A couple of times she asked him whether the taxes were paid up and he replied "Sure, what do you think I've been doing?" At no time was

appellee ever forbidden to go onto the property. She was never ousted or dispossessed by the appellant, nor told that he claimed title to the property, nor did she suspect that he did claim title to it. The appellant lived in the property about seven years after the death of Mrs. Hare. He knew the title was in her name. Every year he asked for tax statements in her name and paid the taxes in her name.. He owned other property and was familiar with real estate transactions.

Shortly after the death of Mrs. Hare the appellees' grandfather spoke to the appellant in the presence and hearing of the appellee Ethel M. Chisman about the legal rights of the children in the property, and the appellant told him he would see to it that when the time came—when they got old enough—they would get their share. She has relied upon that statement all these years. The appellant testified he did not claim the entire ownership of the property; he did not dispute his stepdaughter's and son's one-third interest in the property; that his stepdaughter and son were supposed to have a third interest, which however, he thought would not take effect until his death.

The appellant first says he established an equitable title to the land by virtue of the contract to purchase. But by his cross-complaint he asserted a legal title only. In a suit to quiet title a plaintiff or cross-complainant who pleads a legal title cannot have a decree quieting title in himself upon proof of an equitable title only. *Sawyer* v. *Kleine* (1948), 118 Ind. App. 616, 82 N. E. 2d 533; *Johnson* v. *Pontious* (1889), 118 Ind. 270, 20 N. E. 792; *Coppock* v. *Austin* (1904), 34 Ind. App. 319, 72 N. E. 657; 1 Lowe's Rev., Works' Indiana Practice, p. 514. In *Indiana Trust Co.* v. *Sherer* (1933), 96 Ind. App. 62, 180 N. E. 603, upon which case the appellant strongly relies, equitable

ownership was alleged and facts were set out showing equitable ownership.

But further, we do not believe the evidence most favorable to the appellee establishes a trust. It is true the appellant testified he paid for the property and he did not know the deed was taken in his wife's name, but the evidence most favorable to the appellees discloses that Alice Myrtle Hare paid the largest part from her own earnings; he told her if she built on the premises it would be "on her own hook;" she would have to pay for it; and he washed his hands of it. She assumed full management and control of the property during her lifetime. He knew the property was in her name. He was familiar with real estate transactions, and joined in the execution of a mortgage on the premises as her husband. We think the evidence would support the inference that he did know the deed was issued to her in her name and that he acquiesced in the issuance thereof. No resulting or constructive trust would arise out of those facts and circumstances.

The appellant asserts legal title in himself by adverse possession. As above stated, Alice Myrtle Hare acquired the legal title during her lifetime. At her death the legal title vested in these parties as tenants in common. The question is, therefore, whether the appellant did thereafter acquire the legal title, as against his cotenants, by adverse possession.

The appellant was occupying the land, with his wife, at the time of her death. Under the facts above recited, his occupancy must be regarded as being permissive and by virtue of the marital relationship. Such a possession of real estate by the husband could not be said to be adverse to the wife's estate. *Torrez* v. *Brady* (1932), 37 N. M. 105, 19 P. 2d 183.

This case is much like *Torrez* v. *Brady, supra.* In that case, as here, the husband remained in possession of his deceased wife's real estate after her death. He was one of the heirs at law of his wife, and as such became a cotenant of his children and stepchildren. We quote a portion of the language of that opinion as follows:

"In Smith v. Borradaile et al., 30 N. M. 62, 227 P. 602, 606, this court says:

" 'Before considering the effect of the proofs offered, it may be well to state the rule as to entry, possession, and ouster, or adverse possession, as between tenants in common. The language of Judge Story in Clymer's Lessee v. Dawkins, 3 How. 674-689 (11 L. Ed. 778), which was a suit arising upon a tenancy in common, is a correct statement of the rule:

" ' "It is true that the entry and possession of one tenant in common, of and into the land held in common, is ordinarily deemed the entry and posseson of all the tenants; and this presumption will prevail in favor of all, until some notorious act of ouster or adverse possession by the party so entering into possession, is brought home to the knowledge or notice of the others."

" 'It is clear that there was no physical act of ouster on the part of Perfecto as against his coheirs and cotenants prior to the year 1912, when he conveyed the whole property to Field. This conveyance and the subsequent possession of Field and his grantee, Smith, constituted an ouster as to any other person claiming . . . the premises. Neher v. Armijo, 9 N. M. 325, 54 P. 236. The question then remains, Was there anything in the circumstances of his possession that would give notice to his cotenants that such possession was hostile, adverse, and under claim of right? The mere possession itself and payment of taxes is presumed to be for the benefit of all, and appropriation of rents and profits does not constitute adverse possession. (citing authorities). Nor does appropriation of rent for a long term of years raise a conclusive pre-

· sumption of adverse possession. (citing authorities).'

"In Bradford v. Armijo, 28 N. M. 288, at page 297, 210 P. 1070, 1074, this court, in speaking upon the same subject, said: 'It fairly appears from the proofs that the appellee and those with whom and under whom he claims are the only persons who have used and occupied the premises and exercised dominion over the same during the period of the statute of limitations prior to the institution of this suit. But this fact, standing alone, is insufficient to start the running of the statute. There is a strong presumption against every claim of a cotenant that he holds possession in opposition to the rights of his cotenants, and, in the absence of evidence to that effect, he will be presumed to hold for all of the cotenants. Every element of adverse possession must be shown. There must be express denial of the title and right to possession of the fellow tenant, brought home to the latter openly and unequivocally. (citing authorities).'

"We are satisfied with the rule thus announced, and it is also generally held that the continued possession of the wife's land by her husband after the wife's death would not be considered adverse to her heirs at law until actual knowledge of the adverse claim was brought home to the heirs. 2 C. J. 161, 162. We are satisfied that the plea of the statute of limitations, interposed by the appellant, was properly denied by the court."

We approve the language above quoted. The same rules are deducible from our authorities, some of which are the following: *Manchester* v. *Doddridge* (1852), 3 Ind. 360; *Sanford* v. *Tucker et al.* (1876), 54 Ind. 219; *English* v. *Powell et al.* (1889), 119 Ind. 93, 21 N. E. 458; *King* v. *Carmichael* (1893), 136 Ind. 20, 35 N. E. 509; *Price et al.* v. *Hall* (1895), 140 Ind. 314, 39 N. E. 941. And see 1 Am. Jur., Adverse Possession, §50, p. 819, et seq.

It is for the trier of the facts to say whether, from the length of time of the occupancy, with the other

evidence on the subject, there has been an ouster. *Manchester* v. *Doddridge, supra.* Certainly it cannot be said that the evidence here would be bound to bring appellant's case within the rules announced. He remained in the premises after his wife's death in express recognition of the children's rights, and he promised to see to it that they would get their share. There is no evidence that they were ever ousted. There is no evidence which would compel the belief that they knew of any denial of their title and right to possession; nor is there evidence of circumstances from which it could be said they should have known it. It was not an unnatural act for them to permit their father to occupy this property, collect the income, pay the expense, and enjoy any surplus. They should not be penalized for such an act of kindness unless the law requires that result. It does not do so.

The appellant says appellee's cause of action was barred by the statute of limitations. The right of cotenants to partition exists from the date of the inception of the tenancy. The statute of limitations will not begin to run in favor of a cotenant in possession against a cotenant out of possession until there is an ouster of the latter by the former. 1 Lowe's Rev., Works' Indiana Practice, §4.25, p. 96; 1 Am. Jur., Adverse Possession, §57, p. 828. No demurrer raising any question concerning the statute of limitations was addressed to the complaint, nor could one have been sustained if filed. The appellant did not plead that defense by way of answer, and it is, therefore, deemed waived. Moreover, there is no evidence of an ouster which would start the running of the statute.

Judgment affirmed.

NOTE.—Reported in 101 N. E. 2d 268.