## CIRCUIT COURT OF THE CITY OF RICHMOND

Dorothy Joyce Papciak,
Guardian of
Bambi Michelle Torres,
Infant

v.

Bambi Michelle Torres,
Infant

In re Matthew Philip West Whitfield

November 3, 1995

Case No. HG-1082-4

BY JUDGE RANDALL G. JOHNSON

In each of these cases, a guardian of an infant ward, who is also the parent of the ward, asks the court to approve expenditures of estate principal which have already been made. The Matthew Philip West Whitfield guardianship is before the court on a show cause order entered at the request of the commissioner of accounts pursuant to Va. Code § 26-18. The Bambi Michelle Torres guardianship is before the court on the guardian's petition for approval of disbursements of principal pursuant to Va. Code § 31-10. Because the primary issue in each case is the same, they will both be decided in this opinion.

Only a brief factual background is needed. John M. M. Whitfield was appointed guardian of his son Matthew's estate in 1981. The only estate asset was a $5,000 inheritance from Eleanor Barker Vincent, Ms. Whitfield's mother and Matthew's grandmother. Matthew, who is now eighteen, was a troubled child and teenager. While it would serve no good purpose to give a detailed account of all of the trouble he got into and all of the property damage he caused both in his parents' home and elsewhere, as well as legal fees and counseling costs incurred by his parents on his behalf, it is safe to say that his parents were required to expend far more money on his behalf than most parents have to pay on behalf of their

children. In fact, the court is satisfied beyond question that Matthew's parents paid much more than Matthew's $5,000 inheritance to repair or replace property willfully damaged or destroyed by Matthew, for legal fees, counseling services, and special schooling for Matthew, as well as for other more normal items, such as a computer, swimming lessons, and the like. The problem is that many of these items were paid for out of Matthew's guardianship account without prior approval of the court. In fact, the guardianship account is now at zero, with all but approximately $300 having been spent by the guardian. The remaining $300 was either withdrawn by Matthew with deposit slips and checks forged by Matthew before he was eighteen or written by him legitimately after he turned eighteen.

With regard to the Bambi Michelle Torres estate, Ms. Papciak, Bambi's mother, was appointed guardian in 1992. Nearly $70,000 came into the estate. After a fire destroyed all or most of Ms. Papciak's and Bambi's property, including their clothing and furniture, and after Ms. Papciak's mother became terminally ill, Ms. Papciak began using principal from the estate to pay for a wide variety of items, some of which were for Bambi and some of which were not. In all, approximately $31,000 was spent out of estate assets, about $20,000 of which was for items directly for or attributable to Bambi. The expenditure of the other $11,000, though not for Bambi, was necessitated by the fire and Bambi's grandmother's illness. As was true with Mr. Whitfield, Ms. Papciak made these expenditures without court approval.

Based on the above, which again is only a brief summary of the evidence presented, the court concludes without hesitation that neither Mr. Whitfield nor Ms. Papciak acted out of any greed or desire for personal gain. Both of these guardians did what they rightfully believed was in the best interest of their wards and of their families. Mr. Whitfield wanted Matthew to know that he, Matthew, would have to pay for his vandalism and for his rebellious and destructive behavior. Ms. Papciak was faced with two enormous tragedies that required large expenditures of money. In fact, with the exception of the approximately $11,000 used by Ms. Papciak for her mother, the court finds that all of the funds spent by the guardians out of the guardianship accounts were unquestionably spent for the care, welfare, and maintenance of their respective wards. The question remains, however, whether the court may approve such expenditures after the fact. The court holds that it may not.

Historically in Virginia, both at common law and by statute, a guardian was absolutely prohibited from spending anything other than the income of a ward's estate without prior court approval. Indeed, as far back as 1819, it was provided:

> If the testator, in the case of a testamentary guardian, shall omit to direct the sum of money, or the fund, to be applied to the maintenance and education of his infant, and if the disbursements of such or any other guardian, being suitable to the estate and circumstances of the ward, shall exceed the profits of his or her estate in any year, the balance, with the allowance of the said court, may be debited in the account of a succeeding year, and paid out of the personal estate of the infant; and so much and such part thereof may, with the approbation of the court, be sold at public auction, to the highest bidder, after reasonable notice of the time and place of such sale has been given, as shall be necessary for that purpose.

Revised Code of Virginia of 1819, c. 108, § 9.

In interpreting the above statute, the Supreme Court of Appeals of Virginia, as our current Supreme Court was then known, in a case involving a mother who was guardian of seven of her children, left no doubt as to its meaning:

> A Guardian cannot, under any circumstances, justify the application of any part of the principal of an infant's estate to his education or maintenance, without the previous sanction of the proper Court. This is the spirit of our Statute, and indeed its express letter. If there is any difference in this respect, between a stranger and a parent acting as Guardian, the rule should be enforced with more rigor against the latter than the former; for there is a natural, if not a legal obligation, on all parents to support their children, if of ability to do so.

*Myers v. Wade*, 27 Va. (6 Rand.) 444, 447-48 (1828) (opinion by Coalter, J.).

Judge Brooke, in the same case, said:

> [the guardian] admits, in her Answer, that when she qualified as such, she received the estate into her hands in that capacity, but she insists, that the [wards] have no claim against her, as the whole of it was expended on their maintenance, and some small

advancements. For the latter, she has credit. By the 26th section of the Act concerning Guardians, her defence as to the former is forbidden. Under that section, whatever might be her motives, she could expend no part of the principal of the estate on the maintenance of her Wards, without the approbation of the Court. Such a defence could not be made at Law, and to allow it in a Court of Equity, would be to repeal the Statute. Beyond the interest upon the principal estate, she was not at liberty to go.

*Id.* at 455.

The "26th section of the Act" referred to in the above quote provided, in pertinent part, as follows:

When an orphan shall have an estate, the profits of which are insufficient for his or her support, and yet is of such tender years that the overseers of the poor cannot prevail upon a proper person to accept of the same orphan as an apprentice, it shall and may be lawful for the guardian or curator, with the approbation of the court, to take from the personal estate of his ward such sums of money as are necessary for the immediate support of the orphan, until he or she shall arrive at an age when the overseers of the poor can find a suitable master or mistress for him or her.

Although all provisions concerning orphans have now been removed from the Code, Judge Brooke's comments are still valid since the same result would have been reached under § 9 of the subject act which is also quoted above, and which is not limited to orphans.

In 1849, the statute was changed to allow court approval of expenditures of estate principal even after such expenditures had been made. Specifically, Chapter 127, §§ 8 and 9 of the Code of 1849 provided:

§ 8. No disbursements shall be allowed to any guardian, where the deed or will, under which the estate is derived, does not authorize it, beyond the annual income of the ward's estate, except in the following cases:

*First,* when the ward is of such tender years or infirm health that he cannot be bound out as an apprentice, or no suitable person will take him as such: or,

*Secondly,* when although old enough to be bound out as an apprentice, it shall be deemed best for the ward that the principal of his personal estate, or a portion thereof, should be applied

towards his education and maintenance, and the court before which the accounts of the guardian may be settled shall be satisfied that such expenditure was actually made, and was judicious and proper, and shall allow the same.

§ 9. When any such disbursements shall be so allowed, the court shall, if necessary, order the sale of such portion of the personal estate of said ward as may be necessary to pay the balance of such expenditures over and above the income of his estate, *and may sanction any sale previously made*, which, if it had not been so made, the court at the time of allowing such disbursements would have ordered; but neither the ward personally, nor his real estate, shall be liable for such disbursements.

Emphasis added.

The just-quoted provisions of the Code of 1849 were adopted verbatim into the Codes of 1887 and 1904, Chapter 127, § 8, becoming § 2604, and Chapter 127, § 9, becoming § 2605. While these provisions allowed after-the-fact approval of the sale of *personal* property, the rule with regard to *real* property was not changed. In *Hess v. Hess*, 108 Va. 483, 62 S.E. 273 (1908), decided under the Code of 1904, the Court said:

Section 2604 of the Code provides that "no disbursements shall be allowed to any guardian, where the deed or will under which the estate is derived does not authorize it, beyond the annual income of the ward's estate," except in case of certain exceptions which do not arise here.

Section 2605, after dealing with the disbursement of personal estate, says: "but neither the ward personally, nor his real estate, shall be liable for such disbursements."

A like rule prevails with respect to the sale of lands under the control of the committee of an insane person. Code, sections 1702, 1703.

These are salutary provisions for the protection of the real estate of those under disability, and they cannot be violated with impunity. The strict observance of these statutes is regarded of such importance that this court has repeatedly declined to ratify sales or any other disposition made of a ward's real estate by the guardian without the authority of the court previously obtained. *The jurisdiction of the circuit courts to authorize the application of the proceeds of the corpus of infants' real estate to their*

*maintenance is altogether statutory, and according to the statute (which, as this court has said, must be strictly construed), such authority must be given, if at all, before and not after the expenditure has been made.*

108 Va. at 487-88 (emphasis added).

The reason the above holding is significant here is that in the Code of 1919, the provision allowing a court to sanction a sale of personal estate *previously* made was removed. The sections, which were redesignated §§ 5321 and 5322, now provided:

Section 5321. *Disbursements by guardians; in what cases disbursements beyond income allowed.* — No disbursements shall be allowed to any guardian, where the deed or will under which the estate is derived does not authorize it, beyond the annual income of the ward's estate, until the court before which the accounts of the guardian may be settled shall authorize the same, and such authority shall not be given except where the court shall be satisfied that such expenditure would be judicious and proper.

Any guardian who may desire to spend more than the annual income of his ward's estate for any purpose, shall file a petition in the court wherein his accounts may be settled, setting forth the reasons why it is necessary to make such expenditure, to which petition his ward or wards shall be defendants. The court shall appoint a guardian ad litem to represent the infants, and proceedings on said petition shall otherwise conform in all respects to a bill in chancery, except that the petition may be filed in court upon five days' notice to said infant, and evidence may be taken orally. No attorney's fee shall be taxed in the costs, nor shall there be any writ tax upon said petition. The clerk shall receive a fee of one dollar for all services rendered thereon, to be paid by the guardian out of said estate. The notice required to be served under this section may be served by any person other than the guardian.

Section 5322. *Sale of personal estate to pay excess allowed beyond income.* — When any such disbursements shall be so allowed, the court shall, if necessary, order the sale of such portion of the personal estate of said ward as may be necessary

to pay the balance of such expenditures over and above the income of his estate.

The Revisors' Notes to § 5321 stated:

This section is largely new and is intended to protect the estates of wards to a greater extent than was the case under the former law. It is provided that no guardian shall expend any of the corpus of an estate without first obtaining the consent of the court before which his accounts may be settled. The section prescribes the procedure necessary to obtain this consent. In consequence of the changes made in this section, the latter part of the following section as it stood before the revision [which allowed a court to sanction a *previous* sale of personal property] has been omitted.

The annotation to § 5321 of the Code of 1919 also states, as was discussed earlier, that "[a]t common law *under no circumstances* were guardians allowed any expenditures over the income of their wards unless leave of court was first obtained." Emphasis added.

Coming back now to the present, §§ 31-10 and 31-11 of the present Code of Virginia provide as follows:

Section 31-10. *Disbursement of funds of infants beyond income.* — No disbursement shall be allowed to any guardian, when the deed, will or other instrument under which the estate is derived does not authorize it, beyond the annual income of the ward's estate, until the court before which the accounts of guardians may be settled or the judge thereof in vacation authorizes same and such authority shall not be given except when the court or judge is satisfied that such expenditure would be judicious and proper; provided, however, that the amount of any excess of income over expenditures not disbursed in any annual accounting period, although deemed an accretion to corpus, shall be allowed as a disbursement in any subsequent annual accounting period. Such accumulation disbursement shall not, however, exceed $1,000 in any annual accounting period.

Any guardian who desires to spend for his ward, or any fiduciary holding funds for the benefit of any infant who desires to spend for such infant in any annual accounting period more than the annual income and $1,000 of accumulated income from prior

years deemed an accretion to corpus of the ward's or infant's estate for any purpose, when the deed, will or other instrument under which the estate is derived does not authorize it, shall file a petition in the court wherein his accounts may be settled or before the judge thereof in vacation, setting forth the reasons why it is necessary to make such expenditure, to which petition every such ward or beneficiary shall be a defendant. The court or judge in vacation, or clerk of such court, shall appoint some discreet and competent attorney-at-law as guardian ad litem to represent every such infant or ward or, if no such attorney be found willing to act, some other discreet and proper person shall be appointed as guardian ad litem to represent such infant or ward, and proceedings on the petition shall otherwise conform in all respects to a bill in chancery except that the petition may be filed in court or before the judge in vacation upon five days' notice to the infant or ward unless it be shown that he is under the age of fourteen and the evidence may be taken orally. No attorney's fees shall be taxed in the costs, nor shall there be any writ tax upon the petition. The court or judge may in its or his discretion fix reasonable attorney's fees for services in connection with the filing of such petition. The clerk shall receive a fee of one dollar for all services rendered thereon, to be paid by the guardian or other fiduciary out of the estate. The notice when required to be served under this section may be served by any person other than the guardian.

Section 31-11. *Sale of personal estate to pay excess allowed beyond income.* — When any such disbursements shall be so allowed, the court shall, if necessary, order the sale of such portion of the personal estate of such ward as may be necessary to pay the balance of such expenditures over and above the income of his estate.

As can be seen, with the exception of certain changes and additions which are not at all relevant to the issue now under consideration, the present code provisions are identical to those of the Code of 1919, which in turn reinstituted the provisions of the common law and the statute as they existed when *Myers v. Wade, supra,* was decided. Because it is clear that prior to 1849 a court had no power to approve expenditures of estate principal after the fact, and because it is just as clear that the 1919 Code reestablished the law as it existed prior to 1849 and that such "reestab-

lishment" continues through to the present Code, this court can only conclude that it has no authority to approve any of the expenditures of estate principal made by either guardian here. This is true "whatever might [have been their] motives,"[1] and even though the court believes their motives to have been exemplary. To hold otherwise, as noted by Judge Brooke in *Myers v. Wade,* "would be to repeal the [s]tatute." 27 Va. (6 Rand.) at 455. The expenditures simply cannot be approved.

---

[1] *See* quote from *Myers v. Wade, supra.*