# CIRCUIT COURT OF THE CITY OF RICHMOND

In re Estate of
Paris Lamont Moore,
an infant

March 14, 2001

Case No. 98-603

BY JUDGE RANDALL G. JOHNSON

This matter is before the court on the accountings of Dormeta Moore ("Moore"), financial guardian for her son, Paris Lamont Moore ("Paris"), for the periods June 11, 1998, through June 30, 1999, and July 1, 1999, through September 30, 2000. At issue is whether the guardian is personally liable for expenditures of principal made out of the estate account.

Moore qualified as financial guardian for Paris, who was then eleven years old, on June 11, 1998. In the Memorandum of Facts submitted by her that day, she showed a beginning balance in the estate account of $2,700. In an inventory filed with the deputy commissioner of accounts on June 12, 1999, the same $2,700 was listed as having been received from an insurance settlement on Paris' behalf. In her accounting dated November 14, 2000, which is for the period June 11, 1998, through June 30, 1999, and which was filed in response to a show cause order that was issued after an accounting had not been filed in the time allowed by law, Moore shows administrative expenses of $150, other disbursements of $948.25, and "losses on asset sales" of $200, for a total of $1,298.25, leaving a balance on hand of $1,401.75.[1]

In her report filed with the court on January 30, 2001, the deputy commissioner took "formal exception" to Moore's first accounting.[2] While

---

[1] Actually, the accounting shows assets on hand of $1,402.25. That is apparently a mathematical error.

[2] Although the deputy commissioner filed what she called a "formal exception," Va. Code § 26-31 provides that what the commissioner files is a report, "with any matters specially stated deemed pertinent by the commissioner." Exceptions may

finding that administrative expenses were $152 instead of $150, the deputy commissioner found that all of the other disbursements were from estate principal and improper under the law as it then existed. She reported that assets on hand should have been $2,548 ($2,700 minus $152) and charged Moore with that amount.

In her second accounting, which is also dated November 14, 2000, and which is for the period July 1, 1999, through September 30, 2000, Moore lists total disbursements of $1,387.95 and assets on hand at the end of the period of $307.87.[3] The deputy commissioner again filed a "formal exception." *See* footnote 2, above. Finding that no authorization had been obtained by Moore to spend any of the estate principal, the deputy commissioner disallowed all of the expenditures claimed and again charged Moore with the $2,548 that was charged at the end of the first accounting, which is $2,240.13 more than is presently in the estate. Moore excepts to the deputy commissioner's actions with regard to both accountings.

Before 1999, it was absolutely forbidden for a guardian of a minor to spend principal from the minor's estate without prior court approval. In *Papciak v. Torres* and *In re Whitfield*, which were decided in one opinion and are reported at 37 Va. Cir. 316 (1995), this court discussed in some detail the history of the rule and the basis for the court's conclusion that the rule was at that time still valid. Included in the court's analysis was the following quote from *Myers v. Wade*, 27 Va. (6 Rand.) 444, 447-48 (1928) (Opinion by Coalter, J.):

> A Guardian cannot, under any circumstances, justify the application of any part of the principal of an infant's estate to his education or maintenance, without the previous sanction of the proper court. This is the spirit of our Statute, and indeed its express letter. If there is any difference in this respect, between a stranger and a parent acting as Guardian, the rule should be enforced with more rigor against the

---

then be filed to the commissioner's report, either by the fiduciary or any other interested person, or both, pursuant to § 26-33. In this case, the court will treat the deputy commissioner's "formal exception" as a disallowance of the disbursements to which she objects. Moore's February 8, 2001, letter to the clerk of court is an exception to that disallowance.

[3] As was true with the first accounting, there appear to be mathematical errors in the second one. Not only does the figure shown by her as total disbursements not equal the actual total of the items listed, the court is unable to determine how she arrived at the $307.87 shown as the ending balance. In light of the court's holding, neither discrepancy is important.

latter than the former; for there is a natural, if not a legal obligation, on all parents to support their children, if of ability to do so.

The statute referred to in the above passage was c. 108, § 9, of the Revised Code of Virginia of 1819, which by the time of this court's opinion in 1995 had evolved into Va. Code § 31-10, which in pertinent part provided:

No disbursement shall be allowed to any guardian, when the deed, will or other instrument under which the estate is derived does not authorize it, beyond the annual income of the ward's estate, until the court before which the accounts of guardians may be settled or the judge thereof in vacation authorizes same and such authority shall not be given except when the court or judge is satisfied that such expenditure would be judicious and proper. . . .

Any guardian who desires to spend for his ward . . . more than the annual income . . . when the deed, will or other instrument under which the estate is derived does not authorize it, shall file a petition in the court wherein his accounts may be settled or before the judge thereof in vacation, setting forth the reasons why it is necessary to make such expenditure, to which petition every such ward or beneficiary shall be a defendant.

Based on § 31-10 and its history, this court concluded not only that the guardians in those cases, each of whom was a parent of the respective ward, had no authority to spend any part of the principal of their wards' estates without prior court approval, but also that the court had no authority to give such approval after the fact, "whatever might have been their motives, and even though the court believes their motives to have been exemplary." 37 Va. Cir. at 324.

In 1999, § 31-10 was repealed and § 31-8 was amended to provide, in part:

The guardian of a minor's estate shall have the possession, care, and management of the minor's estate, real and personal, and, after first taking into account the minor's other sources of income, support rights and other reasonably available resources of which the guardian is aware, shall provide for the minor's health, education, maintenance and support from the income of such estate *and, if income is not sufficient, from the corpus thereof.*

Emphasis added.

At the same time, the legislature added § 31-8.1, which provides, in pertinent part:

> A. Notwithstanding the provisions of § 31-8, a guardian of a minor's estate shall not make any distribution of income or corpus to or for the benefit of a ward who has a living parent, whether or not the guardian is such parent, except to the extent that the distribution is authorized by (i) the deed, will or other instrument under which the estate is derived, or (ii) the court, upon a finding that (a) the parent is unable to completely fulfill the parental duty of supporting the child, (b) the parent cannot for some reason be required to provide such support, or (c) a proposed distribution is beyond the scope of parental duty of support in the circumstances of a specific case. . . . The court's authorization may be contained in the order appointing the guardian or it may be obtained at any time prior to the disbursement in question; *however, in extenuating circumstances where the interests of equity so require, the court's authorization may be obtained after the disbursement in question.*
>
> B. A guardian who desires to make any distribution specified in subsection A when neither (i) an existing court order nor (ii) the deed, will or other instrument under which the estate is derived authorizes it, shall file a petition in the court wherein his accounts may be settled, naming the ward as a defendant and setting forth the reasons why such distribution is appropriate.

Emphasis added.

Also added in 1999 was § 31-8.2, the relevant portion of which provides:

> A commissioner of accounts for the jurisdiction wherein a guardian qualifies may authorize the same distributions under the same circumstances as the court may authorize under § 31-8.1 A, except that (i) the total distributions authorized in any one year shall not exceed $3,000 and (ii) the commissioner shall, in his report to the court on the guardian's next accounting, explain the necessity for the distributions so authorized.

Shortly after the above provisions took effect, the deputy commissioner reviewed her records and sent letters to all guardians of infants she thought might be effected by the changes. A letter was sent to Moore on July 29, 1999.

The letter is two pages long and sets out in considerable detail the changes made and the reasons for them. Included in the letter is the following paragraph:

> Prior to the change in the law, a guardian of a minor's property was prohibited from using any part of the principal, sometimes called the corpus, of a minor's estate without first obtaining an Order from the Circuit Court. The guardian could only spend the income earned, with some limited exceptions, without prior Court approval. **Effective July 1, 1999,** a guardian of a minor's estate is authorized to use the estate income and, if income is not sufficient, the principal to provide for the minor's health, education and support, but only after first taking into account the minor's other sources of income, support rights and other reasonably available resources of which the guardian is aware. **However,** a guardian may not distribute income or principal for a minor who has a living parent except to the extent that the distribution is authorized by the Court or the Commissioner of Accounts. The purpose of this new legislation is to make it abundantly clear that the minor's assets are not to be used to discharge a parent's duty to support his or her minor child.

Bold type in original.

Moore says she does not recall receiving the letter, even though the address shown on it is her address and even though it was not returned undelivered to the deputy commissioner. She never sought permission from the court or the commissioner of accounts to spend any part of Paris' funds, funds she says she spent because there was no other way to buy the things — mostly clothes — that Paris needed. About one-half of the total disbursements were made after the new law went into effect.

Based on all of the above, the court will confirm the deputy commissioner's reports, including the disallowance of all disbursements except administrative expenses of $152. The court does so in spite of the present law which allows after-the-fact approval of expenditures of principal because the court was presented no evidence by Moore of what other financial resources were available to Paris during the period in question. In fact, not only was no evidence presented regarding Moore's income, there was also no evidence regarding Paris' father, who at the time of Moore's qualification as guardian in 1998 signed a statement "giv[ing] legal guardian[ship] of Paris Moore to his mother Dormeta Moore." Since the statute allows after-the-fact authorization only in "extenuating circumstances where the interests of equity

so require," the absence of any evidence as to what extenuating circumstances were present in this case prevents such authorization from being given. In light of this ruling, the court expresses no opinion on whether it has authority to give after-the-fact approval of expenditures of principal made before July 1, 1999.

I ask that Ms. Pinchbeck prepare a sketch of an order confirming both reports submitted by her and charging Ms. Moore with $2,548 in disallowed disbursements. A copy of the order should be sent to Ms. Moore, but the original should be sent directly to me. Since Ms. Moore has a bond with surety, I will leave it to Ms. Pinchbeck to decide whether to seek forfeiture of it. I also leave to Ms. Pinchbeck the decision whether it is appropriate to allow Ms. Moore to continue as Paris' guardian or, considering her past actions and the relatively small size of Paris' estate, whether the estate funds, including the funds to be returned by Ms. Moore, should be paid into court. If a forfeiture of the bond is sought or if Ms. Pinchbeck seeks to remove Ms. Moore as guardian, she should schedule a hearing with notice to Ms. Moore.