# Staunton.

## Hess, Guardian v. Hess and Others.

September 10, 1908.

Absent, Keith, P.

1. APPEAL AND ERROR—*Interlocutory Decrees—When Appeal to be Taken.*—While it is permissible, it is not necessary to appeal from certain interlocutory decrees at the time they are rendered. The party may appeal at any time within a year after a final decree has been rendered in the cause, if all the other requisites for appeal exist.

2. GUARDIAN AND WARD—*Maintenance—Corpus of Real Estate—Case in Judgment.*—A devise of real estate to idiotic children with the request that a designated person act as guardian for them and "see that the children are taken care of, and to apply the proceeds of the property to their benefit," does not confer upon the trustee authority to use the *corpus* of said real estate, if necessary, for the purpose of taking care of said idiots. The proceeds mentioned refers to the personal property, and the rents and profits of the real estate.

3. GUARDIAN AND WARD—*Maintenance of Ward—Personal Property—Real Property.*—Unless authorized by the deed or will under which the estate is derived, a guardian has no power to charge the *corpus* of his ward's real estate, whether the ward be dead or alive, with the costs of his maintenance. The statute (Code, sec. 2605) which must be strictly construed, expressly provides that neither the ward personally nor his real estate, shall be liable for disbursements made without authority *previously* obtained. While such disbursements may be permitted to be paid out of personalty, they are practically declared to be no debt or valid demand against the ward or his real estate.

4. GUARDIAN AND WARD—*Maintenance of Ward—Corpus of Real Estate—Jurisdiction of the Circuit Courts.*—The jurisdiction of the circuit courts to authorize the application of the proceeds of the

*corpus* of infants' real estate to their maintenance is altogether statutory, and, according to the statute, which is to be strictly construed, such an authority must be given, if at all, *before* and not after the expenditure has been made.

Appeal from a decree of the Circuit Court of Russell county. Decree for complainant. Defendant appeals.

*Affirmed.*

The opinion states the case.

*Ayres & Smithdeal* and *J. C. Gent,* for the appellant.

*Finley & Gilmer,* for the appellee.

HARRISON, J., delivered the opinion of the court.

The record shows that Susan Ann Hess died in the year 1900, leaving a will which was admitted to probate in August, 1902, and leaving surviving her eight children, six of whom were idiots. By her will the testatrix gave all of her property, real and personal, to these six unfortunate children, whom she describes as persons of feeble mind and unable to take care of their property. The will then appoints James H. Hess, one of her two sane sons, as guardian, "to see that the children are taken care of, and to apply the proceeds of the property to their benefit, and to keep them in order."

James H. Hess, the guardian thus designated, upon the death of his mother, assumed control of the property and the care and supervision of his six feeble-minded brothers and sisters, but did not formally qualify until November, 1903, at which time two of the number had died, and his qualification was as committee for the remaining four.

The bill in this case was filed by William L. Hess, the other sane brother, charging James H. Hess, the guardian and committee, with neglect of duty, abuse of his trust, and committing waste on the land of his *cestui que trust.* The bill then alleges

the death of two of the idiots without issue, calls upon their guardian for a settlement of his accounts, and prays for a partition of the real estate among those entitled thereto.

James H. Hess filed his answer to this bill, denying its allegations of neglect, waste or any other violation of his trust. He avers his willingness to have the lands partitioned and assigned to the parties entitled thereto, and asks that in such partition the interests of the two decedents be allotted to him, provided he can show that he has fully paid for same by exhausting such interests in disbursements made by him for their benefit. The respondent then states, "that upon a fair settlement of his actings and doings as guardian and committee, it will be found that the estate of his brothers and sisters is indebted to him, at least in the sum of six hundred dollars."

The answer does not ask that it be treated as a cross bill, makes no parties thereto, and does not ask that the $600 which respondent claims would be due him upon a settlement with his six wards, be allowed him in this case. It appears that the appellant had made no annual settlement of his accounts.

A commissioner, to whom the cause was referred to take certain accounts, reported that James H. Hess, the acting guardian and committee was entitled to a total of $1,991.35 for the support of his six wards. This aggregate is inadvertently stated in the report and the decree to be $1,642.08. The decree appealed from sustains exceptions taken to this report, denying the right of appellant to the allowance made in his favor for the support of his *cestui que trust*, and appoints commissioners to partition the land in accordance with the prayer of the bill.

The report of the commissioner shows that the testatrix left personal property of the value of only $55.50, and a tract of land containing 184 acres. The evidence shows that this land is poor and capable of furnishing a very inadequate support to six persons. The evidence further shows that these unfortunate people have lived on this land in great poverty and wretched

discomfort. It further appears that the appellant, who was a poor man with a family, contributed occasionally, in a small way, to the help of his wards, and that they worked at times for the appellant who lived on a small place near to them.

A preliminary question is raised by the appellee, who contends that the decree appealed from was final as to the right of appellant to the allowance ascertained by the commissioner, and that no appeal will lie therefrom after one year from May 12, 1906, the date of the decree disallowing such claim.

This contention is without merit. Conceding that the decree was such as the appellant had the right to appeal from, he was not obliged to appeal because it was an interlocutory decree. By virtue of section 3454 of the Code, a party is given the right to appeal from certain interlocutory decrees if he desires to do so. He is, however, not bound to appeal from such decrees at the time they are rendered, but may do so at any time within a year after a final decree has been rendered in the cause, provided all the other requisites for an appeal exist. *Southern Ry. Co.* v. *Glenn,* 98 Va. 309, 36 S. E. 395.

The first contention of appellant is that under the will of Susan Ann Hess he was authorized to use, if necessary, the *corpus* of the real estate devised to her feeble-minded children for the purpose of taking care of them—that the language, "see that the children are taken care of, and to apply the proceeds of the property to their benefit," authorized him to sell or charge both the real and personal property in order to take care of the devisees.

This position is not tenable. The testatrix gives her estate to her six idiot children in fee. She expressed a desire that the appellant act as their guardian and see that they were taken care of. She vested no express power in the suggested guardian to sell or dispose of the real estate left to her children, and if there could be an implied power in a committee or guardian to sell the wards' real estate (as to which we express no opinion), we are satisfied that no such implied power can be gathered

from the language employed. In speaking of the proceeds of their property being applied to their benefit, she plainly had reference to the personal property and the issues and profits of the real estate. If the intention of the testatrix was as contended by appellant, the entire estate, according to the value thereof shown by the record, would be insufficient to support the objects of her bounty for three years, at the rate of maintenance allowed appellant by the commissioner.

We are of opinion that the allowance for maintenance ascertained by the commissioner was not justified by the evidence. In his answer to the bill, appellant did not claim that there would be due him on settlement more than $600, and yet the commissioner finds that there is due him in three years, for the maintenance of these wards, an aggregate of $1,991.35, far more than their home is shown to be worth.

Apart from these considerations, however, the circuit court was plainly right in sustaining the exceptions to the commissioner's report, upon the ground that appellant had no power to charge the *corpus* of his wards' real estate with their maintenance.

Section 2604 of the Code provides that "no disbursements shall be allowed to any guardian, where the deed or will under which the estate is derived does not authorize it, beyond the annual income of the ward's estate," except in case of certain exceptions which do not arise here.

Section 2605, after dealing with the disbursement of personal estate, says: " * * * but neither the ward personally, nor his real estate, shall be liable for such disbursements."

A like rule prevails with respect to the sale of lands under the control of the committee of an insane person. Code, sections 1702, 1703.

These are salutary provisions for the protection of the real estate of those under disability, and they cannot be violated with impunity. The strict observance of these statutes is regarded of such importance that this court has repeatedly

declined to ratify sales or any other disposition made of a ward's real estate by the guardian without the authority of the court previously obtained. The jurisdiction of the circuit courts to authorize the application of the proceeds of the *corpus* of infants' real estate to their maintenance is altogether statutory, and according to the statute (which, as this court has said, must be strictly construed), such authority must be given, if at all, before and not after the expenditure has been made. *Rinker* v. *Streit,* 33 Gratt: 663; *Gayle* v. *Hay's Admr.,* 79 Va. 542; *Whitehead* v. *Bradley,* 87 Va. 676, 13 S. E. 195; *Harkrader* v. *Bonham,* 88 Va. 247, 16 S. E. 159.

Appellant further contends that even though it be held that he is not entitled to charge the real estate of his wards, during their lifetime, with disbursements made by him on account of their support, he is entitled to the satisfaction of his claim for the support of his two deceased wards out of their interest in the real estate left by their mother.

The statute, which must be strictly construed, expressly provides that the wards' real estate shall not be liable for such disbursements. Under this statute, disbursements made by the guardian without the authority of the court, previously obtained, while permitted to be paid out of personalty, are practically declared to be no debt or valid demand against the ward or his real estate. The wise purpose of this statute is to protect and preserve the real property of those under disability. The statute is controlling in this case, and leaves no room for the contention, that a guardian can, after his ward is dead, charge his real estate with a claim that was invalid as against such real estate while the ward was living. The death of the ward cannot cause a claim that has no vitality to spring into life and become an enforceable charge upon real estate which the statute expressly says shall not be liable for such demand. See *Gayle* v. *Hay's Admr., supra; Garnett Ex'or* v. *Carr &c.,* 1 Rob. 208, 222. The object of the statute would be in large

measure frustrated, if the contention under consideration were to prevail.

Upon the whole case, we find no error in the decree appealed from, and it is affirmed.

*Affirmed.*