19 P.(2d) 183

**TORREZ et al. v. BRADY et al.**

No. 3715.

Supreme Court of New Mexico.
Dec. 23, 1932.

Geo. W. Prichard, of Santa Fé, for appellant.

Hurd, Crile & Webb, of Roswell, for appellees.

NEAL, J.

This is a suit in partition begun in the district court of the third judicial district, sitting within and for Lincoln county, N. M., on September 5, 1928, by Refugio Torrez and Martin L. Torrez, as plaintiffs, against Robert Brady, William Brady, John Brady, and George Torrez, as defendants. Final decree partitioning the land and setting apart to Refugio Torrez and Martin L. Torrez their proportionate share thereof in severalty was entered on the 7th day of January, 1931, and from this decree Robert Brady appeals.

There appears, in this case, a difference in the spelling of the names of the plaintiffs, appellees. The name Torrez is sometimes spelled, "Torres," and sometimes spelled "Torrez." We have no means of knowing the correct spelling of this name. We will therefore spell it as it was spelled in the original petition filed in this cause—"Torrez."

Appellees file their motion to dismiss the appeal for the reason: (1) That all matters in appeal have been decided by a judgment rendered October 30, 1930; (2) that no new questions are presented that were not decided by the said judgment; and (3) that this appeal is a collateral attack on the judgment heretofore rendered by this court.

The judgment referred to is our judgment entered October 30, 1930, dismissing an appeal from the interlocutory decree entered in this cause by the district court of Lincoln county on April 29, 1930. Torrez et al. v. Brady et al., 35 N. M. 217, 292 P. 901. We there held that decree of the district court of April 29, 1930, was an interlocutory decree and that an appeal therefrom should be taken within twenty days from the filing thereof, section 105-2502, Comp. St. 1929, and, since more than twenty days had elapsed before application for the appeal was made, that no appeal had been properly taken and the appeal was dismissed. It follows that, in so far as the interlocutory decree and proceeding in this cause prior thereto are involved, the status is the same as if no appeal had ever been attempted from such interlocutory decree. The question is therefore presented: Where an appealable interlocutory judgment, order, or

decree is entered in a cause and no appeal is taken therefrom within twenty days, as authorized by section 105-2502, Comp. St. 1929, can such decree and the proceeding prior to the entry thereof be considered upon an appeal from a final decree entered in the cause?

This question does not seem to have been considered by this court, since the enactment of the above section in 1917. Previous to that time no appeal could be taken from interlocutory orders or decrees. Huntington v. Moore, 1 N. M. 489; Jung v. Myer, 11 N. M. 378, 68 P. 933; Costilla Land Co. v. Allen, 15 N. M. 528, 110 P. 847; and upon an appeal from a final decree all interlocutory orders and decrees connected with it were reviewable. Canavan v. Canavan et al., 17 N. M. 503, 131 P. 493, Ann. Cas. 1915B, 1064. While there is some diversity of opinion among the courts generally upon this question, we think the better doctrine is, that upon appeal from the final judgment, interlocutory orders or decrees and the proceedings upon which they are based, may be reviewed, even though an appeal might have been taken therefrom at the time entered. This view is supported by the following authorities. Des Moines Savings Bank v. Morgan Jewelry Co., 123 Iowa, 432, 99 N. W. 121; Cawley v. Jean, 189 Mass. 220, 75 N. E. 614; M. A. Seeds Dry-Plate Co. et al. v. Heyn Photo-Supply Co., 57 Neb. 214, 77 N. W. 660; McCarney v. Lightner, 188 Iowa, 1271, 175 N. W. 751; Schuman v. Schuman et al., 217 Mich. 184, 185 N. W. 717; Green Sea Lumber Co. v. Pemberton, 188 N. C. 532, 125 S. E. 119; Buchanan v. Berkshire Life Insurance Co., 96 Ind. 510; Kimbrell et al. v. Rogers, 90 Ala. 339, 7 So. 241; Fales v. Lawson, 51 Hun, 487, 642, 4 N. Y. S. 284; Hyatt v. McBurney, 17 S. C. 143; Rossi v. Caire, 174 Cal. 74, 161 P. 1161; City of Palmetto v. Katsch, 86 Fla. 506, 98 So. 352; Chicago Horseshoe Company v. Gostlin, 30 Ind. App. 504, 66 N. E. 514; Lesure Lumber Co. v. Mutual Fire Insurance Co., 101 Iowa, 514, 70 N. W. 761; Hess v. Hess, 108 Va. 483, 62 S. E. 273.

In Hess v. Hess, 108 Va. 483, 62 S. E. 273, 274, supra, the court says:

"A preliminary question is raised by the appellee, who contends that the decree appealed from was final as to the right of appellant to the allowance ascertained by the commissioner, and that no appeal will lie therefrom after one year from May 12, 1906, the date of the decree disallowing such claim.

"This contention is without merit. Conceding that the decree was such as the appellant had the right to appeal from, he was not obliged to appeal, because it was an interlocutory decree. By virtue of section 3454 of the Code of 1904 a party is given the right to appeal from certain interlocutory decrees if he desires to do so. He is, however, not bound to appeal from such decrees at the time they are rendered, but may do so at any time within a year after a final decree has been rendered in the cause, provided all the other requisites for an appeal exist. Southern Ry. Co. v. Glenn's Adm'r, 98 Va. 309, 36 S. E. 395."

This seems to us the more reasonable rule, as these intermediate orders, of necessity, are,

in effect, carried forward and enter into, the final decree, and we can see no necessity or reason to require a cause to be appealed by piecemeal. We cannot think that, by the enactment of section 105-2502, the Legislature intended to do more than permit one aggrieved by such interlocutory decree to have the benefit of a speedy appeal and hearing thereon, if he so desired, or, if he desired otherwise, he might await final decree in the case and by one appeal have reviewed the entire proceedings. The Legislature could not, we think, have intended to put upon litigants the increased expense, and upon the appellate courts the increased labor, of successive appeals in the same case to settle and determine their rights. Any other construction would place upon the members of the bar of the state the responsibility of determining at once whether any given order in the course of a cause was appealable, and, if in doubt, would require them to put clients to the expense of appealing from the order, rather than imperil their interest by risking a later determination that such appeal should have been taken.

The case cited by counsel for appellee as authority supporting their view on this subject, White v. Van Patten, 280 Ill. 215, 117 N. E. 472, we do not consider applicable in this jurisdiction, for the reason that in that case the court held that the decree determining the interest of the parties in a partition suit was under the Illinois practice a final decree, while in this state it is settled that such a decree is interlocutory and may be modified or changed by the court at any time before final judgment, Montoya v. Unknown Heirs of Vigil, 16 N. M. 349, 120 P. 676, and, in any event, that it is an interlocutory decree, and not final, is the law of this case, Torrez v. Brady, supra.

We therefore conclude that the motion to dismiss the appeal must be denied.

The land involved in this suit was owned by Ygnacio Torrez, who died about the year 1890, and left surviving him his widow, Manuelita L. Torrez, and three sons, Refugio Torrez, and Martin L. Torrez, the appellees in this cause, and George Torrez. Thereafter, and in the year 1891, Manuelita L. Torrez married Robert Brady, the appellant here. Thereafter, on the 26th day of January, 1909, the lands which had belonged to Ygnacio Torrez at his death, were partitioned among the heirs at law, and the land involved in this suit was decreed to be the separate property of Manuelita L. de Brady, and it is stipulated in this cause that the land here involved was the separate property of Manuelita L. Torrez at the time of her marriage with Robert Brady. Thereafter, in 1918, Manuelita L. de Brady died, and left surviving her, her husband, Robert Brady, appellant here, William Brady and John Brady, children of her marriage to Robert Brady, and Refugio Torrez, Martin L. Torrez, and George Torrez, children of her marriage to Ygnacio Torrez.

The cause was tried, and by interlocutory decree of April 29, 1930, the interest of Robert Brady in said lands was declared to be an undivided one-fourth thereof, and the interest of each of the children of Manuelita L. de

Brady, to be an undivided three-twentieths thereof, ordered the partition of the same, and appointed commissioners to partition. Thereafter, a final judgment in partition was entered in the cause, setting apart, separately, to the plaintiffs herein, Refugio Torrez and Martin L. Torrez, certain portions of the land in the final decree described.

Appellant, Robert Brady, contends, first, that he acquired the title to the lands, in fee, by a verbal purchase thereof from his wife, accompanied by delivery of possession thereof to him, during the time they were married and living together as husband and wife. The court found this issue against the appellant. Counsel in his brief presupposes that such verbal purchase and livery of seizen was clearly established, and presents his argument that payment of the purchase price, followed by delivery of possession, and the making of improvements, are sufficient to take the case out of the operation of the statute of frauds and vest the title to the property in appellant.

It is true that in this state, as between vendor and vendee, in the case of a verbal sale of real estate, that the payment of the full purchase price, followed by delivery of possession and the making of improvements upon the land, is sufficient to take the case out of the operation of the statute of frauds and to entitle the vendee in possession under such a purchase to a decree in his favor. Osborne v. Osborne, 24 N. M. 96, 172 P. 1039; Jones v. Rocky Cliff Mining Co., 27 N. M. 41, 198 P. 284.

In this case, however, an examination of the record discloses that the court, at the request of the appellant, declined to find that Manuelita L. de Brady, in her lifetime, verbally sold the land to Robert Brady, or that Robert Brady entered into possession of the land under such sale, and the court did find that there was no change in the possession of the land from 1909 until the death of Manuelita L. de Brady, and that, from the time of her marriage to Robert Brady, the possession of the land by Robert Brady was a joint possession with his wife, and by virtue of his relationship to her.

An examination of the record convinces us that the court was justified, under the evidence, both in denying the requested findings of appellant and in making the finding he did make, and it is too well settled in this jurisdiction to require citations of authorities to support it, that this court will not disturb findings of fact by a trial court if reasonably supported by the evidence.

Hence, we think the court did not err in holding that the appellant acquired no title to the lands by a verbal purchase from his wife.

Appellant contends that he was in open, adverse, and notorious possession of the property for sixteen years, before his wife's death in 1918, and thereafter until this suit was filed in 1928, and that appellees are barred, by the operation of the statute of limitations, from having their proportionate share of said property set apart to them.

The land was admittedly the separate property of appellant's wife at the time of

his marriage to her, and the court, we think, properly found that the possession of appellant of said lands during the period of coverture, was a joint possession with his wife, and was by virtue of his marital relationship to her.

Such a possession of real estate by the husband could not be said to be adverse to the wife's estate. 2 C. J. 75; 30 C. J. 846, § 517.

After the death of his wife, Robert Brady remained in possession of the property until this suit was brought. He was one of the heirs at law of his wife, and as such, upon his wife's death, by descent cast, became a cotenant of the appellees and others, and his possession of the common property was the possession of all the heirs at law of Manuelita L. de Brady.

In Smith v. Borradaile et al., 30 N. M. 62, 227 P. 602, 606, this court says: .

"Before considering the effect of the proofs offered, it may be well to state the rule as to entry, possession, and ouster, or adverse possession, as between tenants in common. The language of Judge Story in Clymer's Lessee v. Dawkins, 3 How. 674–689 (11 L. Ed. 778), which was a suit arising upon a tenancy in common, is a correct statement of the rule:

" 'It is true that the entry and possession of one tenant in common, of and into the land held in common, is ordinarily deemed the entry and possession of all the tenants; and this presumption will prevail in favor of all, until some notorious act of ouster or adverse possession by the party so entering into pos-

session, is brought home to the knowledge or notice of the others.'

"It is clear that there was no physical act of ouster on the part of Perfecto as against his coheirs and cotenants prior to the year 1912, when he conveyed the whole property to Field. This conveyance and the subsequent possession of Field and his grantee, Smith, constituted an ouster as to any other person claiming * * * the premises. Neher v. Armijo, 9 N. M. 325, 54 P. 236. The question then remains, Was there anything in the circumstances of his possession that would give notice to his cotenants that such possession was hostile, adverse, and under claim of right? The mere possession itself and payment of taxes is presumed to be for the benefit of all, and appropriation of rents and profits does not constitute adverse possession. Tiedeman, Real Prop. § 498; 45 Cent. Digest [Tenancy in Common § 50], Col. 2665; Tiffany, Real Prop., par. 2014; 7 R. C. L. Cotenancy, pars. 43 and 47; Warfield v. Lindell, 30 Mo. 272, 77 Am. Dec. 614, and note; Bolton v. Hamilton, 2 Watts & S. (Pa.) 294, 37 Am. Dec. 509, and note. Pillow v. S. W. Va. Imp. Co., 92 Va. 144, 23 S. E. 32, 53 Am. St. Rep. 804; Gillaspie v. Osburn, 3 A. K. Marsh (Ky.), 77, 13 Am. Dec. 136, and note. Nor does appropriation of rent for a long term of years raise a conclusive presumption of adverse possession. Warfield v. Lindell, supra—26 years; Bolton v. Hamilton, supra—50 years."

In Bradford v. Armijo, 28 N. M. 288, at page 297, 210 P. 1070, 1074, this court, in

speaking upon the same subject, said: "It fairly appears from the proofs that the appellee and those with whom and under whom he claims are the only persons who have used and occupied the premises and exercised dominion over the same during the period of the statute of limitations prior to the institution of this suit. But this fact, standing alone, is insufficient to start the running of the statute. There is a strong presumption against every claim of a cotenant that he holds possession in opposition to the rights of his cotenants, and, in the absence of evidence to that effect, he will be presumed to hold for all of the cotenants. Every element of adverse possession must be shown. There must be express denial of the title and right to possession of the fellow tenant, brought home to the latter openly and unequivocally. 7 R. C. L. 'Cotenancy,' § 41; Cedar Canyon Con. Min. Co. v. Yarwood, 27 Wash. 271, 67 P. 749, 91 Am. St. Rep. 841, and note at page 867; Joyce v. Dyer, 189 Mass. 64, 75 N. E. 81, 109 Am. St. Rep. 603, and note; Allen v. Morris, 244 Mo. 357, 148 S. W. 905, Ann. Cas. 1913D, 1310, and note."

■ We are satisfied with the rule thus announced, and it is also generally held that the continued possession of the wife's land by her husband after the wife's death would not be considered adverse to her heirs at law until actual knowledge of the adverse claim was brought home to the heirs. 2 C. J. 161, 162. We are satisfied that the plea of the statute of limitations, interposed by the appellant,

was properly denied by the court. Appellant further contends that the plaintiffs are guilty of laches in asserting their claim to the land, and that they should, therefore, in equity, be estopped from having their interest set apart to them.

■ We do not think, under the circumstances of this case, that there has been such laches upon the part of the appellees, and in this connection it further appears from the record that the appellant made no request of the trial court for a finding of fact or conclusion of law upon the question of laches, and hence he is not in position here to urge that as a ground for reversal.

■ It is further contended by appellant that he acquired title to the property in fee by virtue of his quitclaim deed from Whittington, July, 1928, whereby he secured from Whittington whatever interest in the property Whittington owned by virtue of a tax deed executed to him in 1920, for taxes for the year 1905. This tax deed is attacked on the ground of the insufficiency of the description to describe lands attempted to be conveyed. We think, in this case, the sufficiency of this deed is not material, since, in any event, when a cotenant purchases an outstanding title or claim to the common property, such purchase inures to the benefit of the common estate, subject only to the right of the purchasing cotenant to require a proportionate contribution from the other cotenants. Smith v. Borradaile, supra.

We therefore conclude that the judgment

112

in this cause should be affirmed, and it is so ordered.

WATSON and SADLER, JJ., concur.

BICKLEY, C. J., and HUDSPETH, J., not participating.