COURT OF APPEALS OF VIRGINIA

Present:   Judges Benton, Clements and Senior Judge Willis
Argued at Richmond, Virginia


BRENDA KISLEK SAMUEL

v.        Record No. 2501-01-2
          Record No. 1417-01-2

THOMAS FRANKLIN SAMUEL, JR.

MEMORANDUM OPINION[*] BY
JUDGE JEAN HARRISON CLEMENTS
JANUARY 28, 2004


FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
William R. Shelton, Judge

Brian H. Jones (Pitney Jones & Fantl, P.L.C., on petition and brief),
for appellant.

John N. Clifford (Clifford & Duke, P.C., on briefs), for appellee.


Brenda Kislek Samuel (wife) appeals the judgment of the trial court in two separate cases.

In Record No. 2501-01-2 (Samuel II), wife appeals the trial court's dismissal of her motion for

judgment alleging a breach of the parties' "Agreement Regarding Separation, Support and Division

of Property" (Agreement) by Thomas Franklin Samuel, Jr. (husband).  In Record No. 1417-01-2

(Samuel I), wife appeals the trial court's dismissal of a rule to show cause issued against husband

for his alleged violation of the terms of the final decree of divorce by failing to pay wife certain

sums in accordance with the Agreement.  Husband argues (1) that wife's appeal in Samuel II is

barred because wife failed to appeal the trial court's order dismissing her motion for judgment and

(2) that the trial court's judgment in Samuel I should be affirmed because wife agreed that the trial

court's letter opinion in Samuel II, which was incorporated into the trial court's order dismissing the

rule to show cause, resolved the matters at issue in Samuel I.  Husband also requests an award of

      * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

attorney's fees and costs associated with these appeals. For the reasons that follow, we dismiss wife's appeal in Samuel II, affirm the judgment of the trial court in Samuel I, award husband reasonable appellate attorney's fees and costs, and remand these cases to the trial court for determination of those fees and costs.

As the parties are fully conversant with the records in these cases and because this memorandum opinion carries no precedential value, this opinion recites only those facts and incidents of the proceedings as are necessary to the parties' understanding of the disposition of these appeals.

## I. BACKGROUND

The parties were married on September 11, 1976, and divorced by a final decree of divorce entered on June 10, 1998. The final decree affirmed, ratified, and incorporated the Agreement, which was executed by the parties on December 23, 1997.

On April 14, 2000, wife filed a petition for a rule to show cause against husband in Samuel I, alleging husband had violated the terms of the final decree by failing to pay her certain sums in accordance with the incorporated Agreement. Specifically, wife alleged that husband had agreed to maintain her as an employee of the marital business, Water Beds, Inc. (WBI), for a period of four years beginning on January 1, 1998, and continuing until December 31, 2001, and to guarantee certain payments in connection with that employment, as set forth in paragraphs 24(b), (c), and (d) of the Agreement.[1] Wife alleged husband breached the Agreement by failing to keep her as an

_____

[1] Paragraphs 24(b), (c), and (d) of the Agreement provide, in pertinent part, as follows:

> b. Wife hereby agrees to remain an employee of [WBI] for a period of four (4) years beginning on the 1st day of January, 1998 and ending on December 31, 2001. . . . For this period of employment, Wife shall be paid $525.00 gross income per week, subject to the usual employee deduction (i.e. FICA, state and federal income taxes, etc.). . . .

– 2 –

employee and failing to pay her wages as an employee after December 23, 1999.  On May 24, 2000, the trial court entered, "upon consent of the parties," a show cause order requiring husband to subsequently appear before the court and show cause why he should not be found in contempt of court for failing to comply with the final decree of divorce.

During the pendency of Samuel I, wife filed a motion for judgment in Samuel II, alleging husband had breached the Agreement and seeking damages of $54,600, interest, and attorney's fees and costs.  Specifically, wife alleged that, as part of the Agreement, husband purchased her interest in WBI, for which she was to receive $525 per week for four years.  Wife claimed that husband breached the Agreement by failing to make the required payments for the final two years.

Simultaneously with the filing of her motion for judgment, wife filed a motion to consolidate Samuel II and Samuel I, arguing that "[t]he evidence and legal concepts for resolving [the two] matters [were] identical and judicial economy [was] best served by trying both cases together."  The motion, to which husband objected, was denied by the trial court.

Thereafter, husband filed a grounds of defense and counterclaim in Samuel II.  In his grounds of defense, husband admitted that wife agreed to transfer her interest in WBI.  He averred, however, that the Agreement provided in plain and unambiguous language that, in exchange for her

---

c.  Husband hereby agrees to keep Wife as an employee of [WBI] for a period of four (4) years beginning on the 1st day of January, 1998 and ending on December 31, 2001.  Husband hereby personally guarantees that Wife shall be paid $50,000.00 gross during the first two (2) years of this time period (January 1, 1998 through December 31, 1999[)].  Therefore, if, for any reason, [WBI] fails to make the said payments to Wife, Husband shall personally make up the deficiency until Wife receives $50,000.00 from all sources, at which time his personal guarantee terminates.

d.  As part of her employment with [WBI], Wife shall continue to receive health insurance as an employee, and she shall be entitled to dental insurance so long as [WBI] provides it to all qualified employees.

interest in the company, wife was to receive a lump sum equitable distribution of $30,181.66, in three equal installments, which he had already paid her. Husband denied he had failed to make any required payments or breached the Agreement. Husband asked the trial court to dismiss wife's motion for judgment and award him sanctions and attorney's fees.

In his counterclaim, husband sought attorney's fees, costs, and interest, alleging wife had breached the Agreement by filing her motion for judgment. Husband incorporated the Agreement into his counterclaim. Wife filed an answer to husband's counterclaim, admitting the authenticity of the Agreement but denying husband's allegations.

Husband then filed a motion for summary judgment in Samuel II. In his motion, husband asserted, *inter alia*, that the language of the Agreement was plain and unambiguous and provided: (1) in paragraph 22(g), that wife agreed to transfer to husband all of her interest in the jointly held stock in the closely held corporation, WBI, for which transfer wife would "receive a lump sum equitable distribution award of $30,181.66"; (2) in paragraph 26, that the lump sum settlement of $30,181.66 was "payable in three (3) equal installments of $10,060.55 each, beginning on September 1, 1998, and continuing each two consecutive September firsts thereafter"; (3) in paragraph 24(b), that wife agreed "to remain an employee of [WBI] for a period of four (4) years beginning on the 1st day of January, 1998 and ending on December 31, 2001," and that, "[f]or this period of employment, [w]ife [was to] be paid $525.00 gross income per week, subject to the usual employee deduction[s]"; and (4) in paragraph 24(c), husband agreed to keep wife "as an employee of [WBI] for a period of four (4) years beginning on the 1st day of January, 1998 and ending on December 31, 2001," and that husband "personally guarantee[d] that wife [was to] be paid $50,000 gross during the first two (2) years of this time period," meaning that, if for any reason WBI failed to make those payments to wife, husband would "personally make up the deficiency until [w]ife receive[d] $50,000 from all sources, at which time [husband's] personal guarantee terminate[d]."

Husband argued that the Agreement did not provide that the weekly payments of $525 were in exchange for wife's interest in WBI. Rather, he argued, they were compensation for her employment. Husband further argued that, wife having admitted that she received two years of payments at $525 gross per week, or $54,600 total, from WBI, he had no legal liability for the remaining two years under the Agreement. Husband sought dismissal of the motion for judgment and sanctions. In his supplemental memorandum in support of his motion for summary judgment, husband attached and incorporated wife's responses to discovery, in which wife admitted she had received a $30,181.66 lump sum payment pursuant to paragraph 26 of the Agreement and $525 per week in gross pay from January 1, 1998, through December 31, 1999, pursuant to paragraphs 24(b) and (c) of the Agreement.

In her memorandum in opposition to husband's motion for summary judgment, wife argued as follows:

> [Wife] does not seek rescission, reformation or cancellation of this contract; only damages for breach of the contract. The nature of the breach is that she did not received [sic] all of the monies due to her under the PSA. However, . . . the operative terms are self-contradictory and ambiguous, thereby requiring the Court to receive parol evidence in order to determine the intent of the parties in entering into the agreement.

There were only two parties to the Agreement, wife asserted. Because husband did not sign the Agreement in his capacity as an officer of WBI, the obligation, wife argued, was husband's personal duty to insure that WBI employed and paid her.

Husband's motion for summary judgment was argued at a hearing on April 13, 2001. The trial court issued a letter opinion on April 26, 2001. Finding the language of the Agreement "clear and unambiguous," the trial court ruled that husband's agreement to keep wife as an employee of WBI was "completely separate from the agreement to guarantee the two years of payments." The court reasoned that, when husband, the president and sole owner of WBI, agreed to employ wife, he

acted as an agent of WBI, and, when he agreed to personally guarantee the first two years of payments for that employment, "he made the individual promise that he would pay her if the company failed to pay." Thus, the trial court concluded, husband did "not have a duty to make the remaining two years of payments."

By order entered May 4, 2001, in Samuel II, the trial court granted husband's motion for summary judgment and dismissed wife's motion for judgment, but declined to impose sanctions. The court's order further provided that the "matter [was to] remain pending as to [husband's] [c]ounterclaim." Counsel for wife endorsed the order as follows: "Seen and Objected to: For the reasons and arguments set forth in [wife's] Memorandum in Opposition to Summary Judgment." Wife did not file a notice of appeal within thirty days of the entry of that order.

Thereafter, by order entered May 29, 2001, in Samuel II, the trial court entered judgment on the counterclaim against wife and in favor of husband in the amount of $2,154. The order further provided that the matter was "ended and stricken from the docket." Counsel for wife endorsed the order as follows: "Seen and Objected to: For the reasons set forth in [wife's] Memorandum in Opposition to Summary Judgment."

In Samuel I, the trial court entered an order on May 4, 2001, dismissing the rule to show cause previously issued against husband and awarding husband attorney's fees of $9,273.50. As noted in the trial court's order, the court's decision was reached

> upon pleadings; upon a Rule to Show Cause; upon a series of hearings; upon a letter opinion in the law case of [Samuel II] dated April 26, 2001, which opinion is incorporated herein by reference; upon agreement of the parties that the said letter opinion resolves the matter of the Rule to Show Cause.

Counsel for wife endorsed the order as follows: "Seen and Objected to: For the reasons and arguments contained in [wife's] Memorandum in Opposition to Summary Judgment submitted in [Samuel II]."

- 6 -

Wife subsequently appealed from the trial court's May 4, 2001 order in Samuel I to this Court and from the trial court's May 29, 2001 order in Samuel II to the Supreme Court. In her notice of appeal in Samuel II, which was filed with the trial court on June 28, 2001, wife expressly stated that she was appealing the trial court's "decision . . . dated May 29, 2001" and that no transcript would be filed in the appeal because "no testimony was taken in [the] case since the Court dismissed the Show Cause as a matter of law."

The Supreme Court transferred wife's appeal in Samuel II to this Court on September 20, 2001. On September 27, 2001, wife filed a motion with this Court to consolidate Samuel I and Samuel II, asserting that both appeals arose "out of the same set of facts and legal theories relating to the . . . Agreement." Husband filed a reply to the motion, stating, in part, that wife had not appealed the trial court's order dismissing her motion for judgment in Samuel II, but had instead appealed the order granting judgment on husband's counterclaim. By order dated November 21, 2001, this Court refused wife's motion to consolidate the cases for briefing.

The parties have filed various other motions in each case, which were not ruled on by this Court pending oral argument. The cases were argued consecutively. We permitted both parties to be heard orally.

## II. ANALYSIS

In Samuel II, wife contends on appeal that the trial court erred in granting husband's motion for summary judgment and dismissing her motion for judgment. Specifically, she maintains that, in construing the parties' Agreement, the trial court erred (1) in finding that husband was acting as an agent for WBI and contracting on its behalf, because the agency theory was never an issue pled or relied upon by husband or addressed by wife below;[2] (2) in ruling, as a matter of law, that husband

---

[2] We note that, contrary to wife's assertion, wife discussed the principle of agency in her memorandum in opposition to husband's motion for summary judgment.

was acting as an agent of WBI in employing and compensating wife; and (3) in finding the terms of the Agreement unambiguous and, thus, not receiving parol evidence to construe them.

In response, husband asserts that, while wife's assignments of error in Samuel II apply only to the trial court's May 4, 2001 order granting his motion for summary judgment and dismissing wife's motion for judgment, wife appealed only the trial court's May 29, 2001 order granting him judgment on his counterclaim. Husband contends that, because wife did not appeal the May 4, 2001 order, her claims "should not be considered."

In considering husband's contention, we first examine the applicable statutes and Rules of the Supreme Court that "set forth the jurisdictional requirements for perfecting an appeal to this Court." Zion Church Designers & Bldrs. v. McDonald, 18 Va. App. 580, 582-83, 445 S.E.2d 704, 705 (1994). Code § 17.1-408 provides that "a notice of appeal to the Court of Appeals shall be filed in every case within the court's appellate jurisdiction as provided in § 8.01-675.3." The notice of appeal shall be filed "with the trial court," Code § 17.1-407, and, as relevant here, "shall be filed within thirty days from the date of any final judgment, decree or conviction," Code § 8.01-675.3. The "time[] prescribed for filing the notice of appeal . . . [is] mandatory," Rule 5A:3(a), and, unless followed, "[n]o appeal shall be allowed," Rule 5A:6.

Addressing many of these same statutes and rules, we held in Zion Church Designers & Bldrs., 18 Va. App. at 583, 445 S.E.2d at 705-06, as follows:

> The time requirement for the filing of a notice of appeal is jurisdictional. The filing forestalls the finality of the appealed adjudication, notifies the appellee that he cannot rest on his victory, and initiates the time frame of the case in the Court of Appeals. The time requirement for filing is mandatory, and failure of the appellant to file the notice of appeal timely requires dismissal of the appeal.

Here, wife did not file a notice of appeal with the trial court within thirty days of the entry of the court's May 4, 2001 order in Samuel II. However, wife did file a notice of appeal within thirty

days of the entry of the trial court's May 29, 2001 order. That notice of appeal specifically indicated that wife was appealing the trial court's "decision . . . dated May 29, 2001."

By its plain terms, the order of May 29, 2001 dealt only with husband's counterclaim that wife's filing of the lawsuit in Samuel II constituted a breach of the Agreement and provided husband relief only on that claim. In contrast, by its plain terms, the order of May 4, 2001 dealt with the issues related to wife's motion for judgment and husband's motion for summary judgment and provided husband relief on his motion for summary judgment by dismissing the motion for judgment. Clearly, then, the claims of error raised by wife on appeal in Samuel II relate strictly to the trial court's May 4, 2001 order granting husband's motion for summary judgment and dismissing wife's motion for judgment.

Because wife filed no notice of appeal from the order of May 4, 2001, we must decide whether that order was a final, appealable order of the issues wife seeks to present on appeal in Samuel II. We hold that it was.

"A final [order] is one "'which disposes of the whole subject, gives all the relief that is contemplated, and leaves nothing to be done by the court.'"" Erikson v. Erikson, 19 Va. App. 389, 390, 451 S.E.2d 711, 712, (1994) (quoting Southwest Virginia Hosps. v. Lipps, 193 Va. 191, 193, 68 S.E.2d 82, 83-84 (1951) (quoting Ryan v. McLeod, 73 Va. (32 Gratt.) 367, 376 (1879))).

Here, wife's motion for judgment alleged that husband breached the Agreement in failing to make payments to wife as required by the Agreement and requested damages resulting from that breach. In granting summary judgment and dismissing wife's motion for judgment in the order of May 4, 2001, the trial court interpreted the terms of the Agreement, determined that husband was not required under the Agreement's terms to make such payments, and ruled that wife was, thus, not entitled to the requested relief. Hence, the May 4, 2001 order in Samuel II

disposed of the "whole subject" of husband's alleged breach of the Agreement, gave all the relief such a suit contemplated, and left nothing further to be done by the court with regard to the issues raised in wife's motion for judgment. That order, therefore, "rendered a final judgment at the time of its entry, and the record establishes that the trial court and the parties treated it as doing so."[3] Super Fresh Food Markets of Virginia, Inc. v. Ruffin, 263 Va. 555, 562, 561 S.E.2d 734, 739 (2002).

Furthermore, our opinion that the May 4, 2001 order in Samuel II was a final order as to the issue of husband's alleged breach of the Agreement is not diminished by the fact that the order retained the case on the trial court's docket for subsequent adjudication of husband's counterclaim. That additional determination was unrelated to the issues raised in wife's motion for judgment and resolved in the May 4, 2001 order. Accordingly, we hold that the May 4, 2001 order in Samuel II was a final, appealable order. See Travis v. Finley, 36 Va. App. 189, 196, 548 S.E.2d 906, 909 (2001) (holding that an order resolving the issue of custody but leaving for subsequent adjudication the issues of "contempt, visitation, child support, health insurance, attorney's fees and sanctions against mother" was a final, appealable order on the date of entry as to the determination of custody). Because wife failed to file a notice of appeal within thirty days of the entry of the May 4, 2001 order in Samuel II, we lack jurisdiction to consider her appeal in that case. Accordingly, we dismiss the instant appeal in Samuel II.

In Samuel I, wife contends on appeal that the trial court erred in dismissing the rule to show cause issued against husband for his alleged noncompliance with the terms of the final decree of divorce. Specifically, wife maintains the trial court erred (1) in failing to hold husband in contempt for his refusal to make all monetary payments due her under the Agreement; (2) in

---

[3] Indeed, the April 26, 2001 letter opinion rendered by the trial court in Samuel II was incorporated into and served as the basis of the court's ruling in the May 4, 2001 order in Samuel I, from which wife filed a timely notice of appeal.

- 10 -

finding the terms of the Agreement unambiguous and, thus, not receiving parol evidence to construe them; and (3) in ruling that husband had no personal obligation under the Agreement to pay her $525 per week for the years of 2000 and 2001.

Husband contends the trial court did not err in dismissing the rule to show cause issued against him in Samuel I because wife agreed that the trial court's April 26, 2001 letter opinion in Samuel II, which was incorporated into the May 4, 2001 order in Samuel I, resolved all of the matters at issue in Samuel I. The trial court having resolved the issues in Samuel I in accordance with the unappealed April 26, 2001 letter opinion granting husband's motion for summary judgment in Samuel II, the judgment of the trial court in Samuel I must be affirmed, husband concludes. We agree with husband.

In her motions to consolidate filed in the trial court and in this Court, wife acknowledges that the appeals in both Samuel I and Samuel II arose "out of the same set of facts and legal theories relating to the . . . Agreement." Furthermore, the trial court's May 4, 2001 order in Samuel I expressly cites husband and wife's agreement "that the [court's April 26, 2001] letter opinion [in Samuel II] resolve[d] the matter of the Rule to Show Cause" in Samuel I. Thus, because the May 4, 2001 order in Samuel II was a final, unappealed order that resolved the issues of Samuel II and Samuel I, we affirm the judgment of the trial court in Samuel I.

Accordingly, we dismiss the appeal in Samuel II, affirm the judgment of the trial court in Samuel I, and remand both cases to the trial court for an award to husband of appellate attorney's fees and costs.[4]

Record No. 2501-01-2, <u>dismissed and remanded.</u>
Record No. 1417-01-2, <u>affirmed and remanded.</u>

---

[4] Because we dismiss the appeal in Samuel II and affirm the judgment of the trial court in Samuel I, it is unnecessary to address the parties' remaining motions.

Willis, J., concurring.

For the reasons set forth in the dissent, I would hold that Record No. 2501-01-2 (Samuel II) continued as an entity in the trial court until entry of the May 29, 2001 final order, that the time frame for perfecting an appeal commenced on that date, and that the appeal was timely. However, because I find the record sufficient to support the trial court's entry of summary judgment in Samuel II, I join the decision affirming by dismissal.

The facts underlying the grant of summary judgment are found in Paragraphs 24b and 24c of the parties' December 23, 1997 Separation Agreement. The trial court held these provisions to be unambiguous. The record supports that holding. The provisions could not be clearer. Mr. and Mrs. Samuel agreed that Mrs. Samuel would continue as an employee of Water Beds Inc. for four years commencing January 1, 1998, and would be paid $525 gross salary during that time. Water Beds Inc. is not a party to this litigation, and its obligation, if any, pursuant to that agreement was not at issue. Mrs. Samuel was paid in excess of $54,000 during two years of employment commencing January 1, 1998. Paragraph 24c further provides:

> [Mr. Samuel] hereby personally guarantees that [Mrs. Samuel] shall be paid $50,000 gross during the first two (2) years of this time period . . . . Therefore, if for any reason, Water Beds inc. [sic] fails to make the said payments to [Mrs. Samuel], [Mr. Samuel] shall personally make up the deficiency until [Mrs. Samuel] receives $50,000 from all sources, at which time his personal guarantee terminates.

The trial court held that the quoted provision imposed a cap on Mr. Samuel's liability under paragraph 24. The provision supports that interpretation. Indeed, it admits reasonably of no other. That liability had been satisfied.

The trial court's dismissal of the rule in Record No. 1417-01-2 (Samuel I) followed necessarily from its decision in Samuel II. Thus, I would affirm the judgment of the trial court on the merits in both cases.

Benton, J., dissenting.

I.

These appeals require us initially to determine whether a final order exists when a trial judge enters judgment against a plaintiff who has filed a motion for judgment on a contract and provides in the judgment order that the action "shall remain pending as to the defendant's counterclaim," which alleges a breach of the same contract. I would hold that the order is not final and that the final order is the judgment entered after the trial judge resolves the pending counterclaim.

(A)

The record indicates that the wife filed a petition (Samuel I) to determine whether the husband should be held in contempt for violating the terms of the final decree for divorce. While the petition was pending, the wife commenced an independent action (Samuel II) by filing a motion for judgment in the same circuit court and alleging breach of the separation agreement that had been incorporated by reference in the final decree of divorce. The motion for judgment sought damages for the breach, attorney's fees, and costs. In response, the husband filed grounds of defense, denying the breach and requesting sanctions against the wife and her attorney. The husband's pleading also contained a two-part counterclaim. First, the husband alleged that the allegations of breach of contract were untrue, that the pleadings violated Code § 8.01-271.1, and that he had incurred substantial attorney's fees. Second, the husband alleged that the filing of the motion for judgment constituted a breach of the agreement and that by the terms of the agreement he was entitled to his attorney's fees and costs in rectifying the breach.

By an order entered May 4, 2001, the trial judge granted the husband's motion for summary judgment, ruling that the husband had not breached the agreement, that sanctions were not warranted because the language of the agreement raised legitimate questions of law, and that

– 14 –

"[t]his matter shall remain pending as to the [husband's] counterclaim." On the same day that the trial judge entered the summary judgment order, the trial judge considered argument on the issues raised by the two parts in the husband's counterclaim. By order dated May 29, 2001, the trial judge entered judgment against the wife on one part of the counterclaim in the amount of $2,154 and ruled that the other part of "the counterclaim is non-suited."

The wife appealed from this ruling within thirty days of the May 29, 2001 order.

(B)

The principle is well established in Virginia "that in the absence of a statutory provision to the contrary, a judgment or order . . . must be final in order that it may be subject to a writ of error or reviewable on appeal." E.I. DuPont DeNemours & Co. v. Univ. Moulded Prods. Corp., 189 Va. 523, 525, 53 S.E.2d 835, 836 (1949). The Supreme Court explained that "[t]his is so because at common law only a final judgment is reviewable on appeal." Id.; see also Sears, Roebuck, & Co. v. Mackey, 351 U.S. 427, 432 n.3 (1956) (noting that "[a]t common law, a writ of error did not lie to review a judgment that failed to adjudicate every cause of action asserted in the controversy"). "Generally speaking, a final order for purposes of Rule 1:1 'is one which disposes of the whole subject, gives all the relief contemplated, provides with reasonable completeness for giving effect to the sentence, and leaves nothing to be done in the cause save to superintend ministerially the execution of the order.'" James v. James, 263 Va. 474, 481, 562 S.E.2d 133, 137 (2002) (citation omitted). "'[O]n the other hand, every decree which leaves anything to be done by the court in the cause is interlocutory as between the parties remaining in court.'" Lee v. Lee, 142 Va. 244, 250, 128 S.E. 524, 526-27 (1925) (citation omitted).

By statutory mandate, "[t]his Court has appellate jurisdiction over final [orders] of a circuit court in domestic relations matters arising under Titles 16.1 or 20, and any interlocutory . . . order involving the granting, dissolving, or denying of an injunction or 'adjudicating the

- 15 -

principles of a cause.'" Horn v. Horn, 28 Va. App. 688, 692, 508 S.E.2d 347, 349 (1998) (citing Code § 17.1-405(3)(f) and (4)).  Thus, the jurisdictional statutes provide for appeals to this Court from either final orders or non-final interlocutory orders that are within the category rendered appealable.  Addressing the distinction between finality and appealability, the Supreme Court noted in Hess v. Hess, 108 Va. 483, 62 S.E. 273 (1908), that, where a defendant's answer to a bill in equity raised a claim against the plaintiff, the trial judge's ruling on only one of several claims, while appealable under the circumstances of that case, was not a final order.

> Conceding that the decree was such as the appellant had the right to appeal from, he was not obliged to appeal because it was an interlocutory decree.  By virtue of . . . the Code, a party is given the right to appeal from certain interlocutory decrees if he desires to do so.  He is, however, not bound to appeal from such decrees at the time they are rendered, but may do so at any time within [the statutory appeal time] after a final decree has been rendered in the cause, provided all the other requisites for an appeal exist.

Id. at 486, 62 S.E. at 274.  This holding in Hess precisely controls the initial dispute in this appeal.

In the case before us, the trial judge's ruling on the husband's summary judgment motion decided only one of several pending claims, all of which involved the contract.  The same two parties were before the trial judge on the counterclaim, which raised two issues arising out of the contract.  Simply put, the issues in dispute in the motion for judgment and in the counterclaim rose from the same contract and involved the same two parties.  Thus, at anytime during the trial judge's consideration of issues concerning the counterclaim, the trial judge could have set aside the summary judgment order and reconsidered his ruling.  The ruling on the summary judgment motion, therefore, was interlocutory and necessarily remained so while the trial judge had under consideration the counterclaim issues.  See id.

Our decision in Travis v. Finley, 36 Va. App. 189, 548 S.E.2d 906 (2001), does not compel a different result.  In Travis, which was a post divorce proceeding, the "mother filed a

petition to amend a previous custody order . . . in which [the] father [earlier had been] awarded custody." 36 Va. App. at 194, 548 S.E.2d at 908. We noted that the order from which the mother appealed was a final order because it "dismissed [the mother's] petition . . . [,] disposed of the 'whole subject' of custody . . . [, and] left [nothing] for the court to act upon." Id. at 196, 548 S.E.2d at 909. Although other matters were pending in the trial court concerning the parties' children, the opinion notes that these other matters were instituted upon the father's motions, id. at 194, 548 S.E.2d at 908-09, and the opinion does not hold that those other matters were part of the same proceeding commenced by the mother's petition. Indeed, the opinion strongly suggests that they were not because it notes that "[t]he subsequent proceedings were unrelated to a determination of custody." Id. at 196, 548 S.E.2d at 909. In short, Travis was not litigation involving multiple counts of action. It raised one issue, child custody, that was separate from the proceedings instituted by the father.

Often, parties bring to appellate courts cases raising issues that require us to decide whether orders are final or just appealable. See Lockheed Info. Mgmt. Systems Co. v. Maximus, Inc., 259 Va. 92, 107, 524 S.E.2d 420, 428 (2000). See also Polumbo v. Polumbo, 13 Va. App. 306, 411 S.E.2d 229 (1991); Pinkard v. Pinkard, 12 Va. App. 848, 407 S.E.2d 339 (1991). When such an appeal involves litigation with multiple counts, as in this case, and contains an order deciding some claims and leaving others for decisions at a later time, that order tacitly denotes that it is not final. Indeed, the Supreme Court of Virginia dismissed an appeal and ruled as follows in a case where the pleadings raised multiple counts:

> [T]he trial court expressly stated in the October 7, 1992 order that its jurisdiction as to Count III was continued. In the absence of a special statutory provision to the contrary, the jurisdiction of the trial court must cease before the jurisdiction of the appellate court accrues. Further, as this Court stated in Lee, "[a]s to any party remaining in the court, [an order] can, in the nature of things, be only interlocutory." Lee, 142 Va. at 252, 128 S.E. at 527.

– 17 –

Leggett v. Caudill, 247 Va. 130, 133, 439 S.E.2d 350, 351 (1994). Judicial efficiency and economy are thwarted if an appeal is prosecuted when the trial judge has not fully resolved all claims between two parties. As we have noted, trial "judges can change their minds." Bennett v. Commonwealth, 33 Va. App. 335, 344, 533 S.E.2d 22, 27 (2000).

The issues of finality and appealability in actions presenting multiple claims for relief can best be illuminated by a brief examination of the evolution in the federal procedure. "Before the adoption of the Federal Rules of Civil Procedure . . . , although [a] judgment was a final decision on [less than all claims], it obviously was not a final decision of the whole case, and there was no authority for treating anything less than the whole case as a judicial unit for purposes of appeal." Mackey, 351 U.S. at 431-32. The traditional rule "followed in the federal courts was that, in a case involving a single plaintiff and a single defendant, a judgment was not appealable if it disposed of some, but less than all, of the claims presented." Id. at 432 n.3. To meet the need for flexibility in modern litigation, the federal rules changed the traditional practice and now provide as follows:

> (b) Judgment Upon Multiple Claims or Involving Multiple Parties. When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

Fed. R. Civ. P. 54(b).

Almost fifty years ago, in a multiple claims action in which a trial judge entered a judgment on the complaint and reserved for later disposition an unadjudicated counterclaim, the United States Supreme Court addressed the significant change in procedure wrought by the federal rules.

> Prior to the promulgation of the Federal Rules of Civil Procedure in 1939, it may well have been true that the Court of Appeals would not, at this stage, have had jurisdiction over [the defendant's] appeal. Under the single judicial unit theory of finality which was then recognized, the Court of Appeals would have been without jurisdiction until [the defendant's] counterclaim also had been decided by the District Court. That would have been so even if the counterclaim did not arise out of the same transaction and occurrence as [the plaintiff's] claim.

Cold Metal Process Co. v. United Eng'g & Foundry Co., 351 U.S. 445, 451 (1956).

Although Rule 54(b) now "allows the [federal] district court to provide relief to litigants that would suffer undue hardship if final judgment is not entered on the adjudicated claim prior to the resolution of the unadjudicated claims . . . [,] Rule 54(b) certification is recognized as the exception rather than the norm." Braswell Shipyards, Inc. v. Beazer East, Inc., 2 F.3d 1331, 1335 (4th Cir. 1993). Indeed, as a means of "preserv[ing] the historic federal policy against piecemeal appeals," Mackey, 351 U.S. at 438, federal courts have held that "the fact the parties on appeal remain contestants below militates against the use of Rule 54(b)." Braswell Shipyards, 2 F.3d at 1336.

As these cases indicate, the federal rules and the decisions interpreting the rules have changed the traditional rules regarding finality and appealability of judgments upon multiple claims in the federal system. In Virginia, however, the traditional common law rule is still in effect, except as modified by statute to render some issues appealable when an interlocutory order is entered adjudicating the principle of the cause. See DuPont Co., 189 Va. at 525, 53 S.E.2d at 836. See e.g. Code § 17.1-405(4) (providing that an "aggrieved party may appeal . . .

from . . . [a]ny interlocutory decree . . . adjudicating the principles of a cause"). We have no rule, practice, or decisional law in Virginia that permits entry of a final judgment prior to the adjudication of all claims raised in multiple count litigation between only two parties.

I would hold, therefore, that the final order in this case was the order entered May 29, 2001, when the trial judge decided the counterclaim issues. Thus, I would further hold that the notice of appeal, which was filed in Samuel II on June 26, 2001, was timely. The majority and I agree that the notice of appeal which was filed in Samuel I was timely.

II.

Turning to the merits of the appeals, I believe the trial judge erroneously granted the husband's summary judgment motion. The pleadings establish that the wife sued the husband for breach of a contract signed by the wife and the husband, individually. The contract referenced in the pleadings recites that "Husband and Wife jointly hold all of the corporate stock in a closely held company named Water Beds, inc." and that "Wife shall do all things necessary to transfer stock to Husband's name as his share of the parties' assets." The contract also provides as follows:

> Husband hereby agrees to keep Wife as an employee of said corporation for a period of four (4) years beginning on the 1st day of January, 1998 and ending on December 31, 2001. Husband hereby personally guarantees that Wife shall be paid $50,000.00 gross during the first two (2) years of this time period (January 1, 1998 through December 31, 1999. Therefore, if, for any reason, Water Beds inc. fails to make the said payments to Wife, Husband shall personally make up the deficiency until Wife receives $50,000.00 from all sources, at which time his personal guarantee terminates.

The contract further provides that "[f]or this period of employment, Wife shall be paid $525.00 gross income per week" and that wife will not compete in a similar business. In view of these provisions, the wife alleged in her motion for judgment that the husband was obliged to pay her salary for four years and failed to do so.

Rule 3:18 provides that "[s]ummary judgment shall not be entered if any material fact is genuinely in dispute." See also Hansen v. Stanley Martin Companies, 266 Va. 345, 351, 585 S.E.2d 567, 571 (2003). Applying this rule, the Supreme Court has held that a judge "considering a motion for summary judgment . . . must adopt those inferences from the facts that are most favorable to the nonmoving party, unless the inferences are forced, strained, or contrary to reason." Dickerson v. Fatehi, 253 Va. 324, 327, 484 S.E.2d 880, 882 (1997). Moreover, as the Supreme Court "recently observed . . . 'the decision to grant a motion for summary judgment is a drastic remedy.'" Slone v. General Motors Corporation, 249 Va. 520, 522, 457 S.E.2d 51, 52 (1995) (citation omitted).

In granting summary judgment, the trial found that "[w]hen [the husband] agreed to employ [the wife], he acted as an agent." He further found that the husband "did not personally guarantee his personal obligation because the obligation to employ [the wife] belonged to Water Beds, inc." Those facts, however, are material to this action and disputed.

The contract provides that "Husband hereby agrees to keep the wife as an employee of said corporation for a period of four (4) years." The contract also discloses that husband signed the contract in his individual capacity without any indication of agency surrounding his signature. The motion for judgment alleges a breach of that obligation. Additionally, the discovery documents disclose that other facts are disputed. The wife responded to a request for admissions as follows:

> 3. Admit that you were kept as an employee of Water Beds, Inc. (the corporation) for a period of two years beginning January 1, 1998 and ending December 31, 1999.
>
> RESPONSE:
>
> Admitted in part and denied in part. Admitted to the extent that I was kept on the payroll for the purposes of paying me the balance of the monies owed to me for transferring my interest in the corporation to the defendant, but denied to the extent that I

acted as a traditional "employee" by performing work duties on behalf of the corporation. This was set up essentially as a fiction so that my health insurance could be maintained and so that the payments would be tax-deductible as to the corporation and, as a result, to the defendant.

The issue posed by the wife's motion for judgment was whether the husband had personal liability for these contractual undertakings when he made those promises and he was the president and sole owner of the corporation.[5] See Dana v. 313 Freemason, A Condo. Ass'n, 266 Va. 491, 587 S.E.2d 548 (2003) (discussing piercing the corporate veil of a close corporation); C.F. Trust, Inc. v. First Flight Ltd. P'ship., 266 Va. 3, 10, 580 S.E.2d 806, 809 (2003) (same). "Ultimately, a decision whether to disregard the corporate structure to impose personal liability is a fact-specific determination, and each case requires a close examination of the factual circumstances surrounding the corporation and the questioned acts." Greenberg v. Commonwealth, 255 Va. 594, 604, 499 S.E.2d 266, 272 (1998).

I believe that the contract clearly establishes that the husband signed it in his individual capacity, that the husband agreed to keep the wife as an employee of the corporation for four

---

[5] In her brief on appeal, the wife contends, for example, the following:

> [T]he parties do not limit [the husband's] liability in the [contract] in the event that Water Beds, inc. ceases payments to [the wife]. A personal guarantee is not a shield to liability. Had they intended to do so, language would have been employed to this effect. For example, they might have agreed that, in the event of insolvency or sale of Water Beds, inc., no further payments would be due beyond the $50,000.00 "guaranteed" amount. Both were aware that [the husband] was acquiring 100% of the stock in Water Beds, inc. and thus both knew that he controlled Water Beds, inc. absolutely. Under [the husband's] theory of this case he, as the sole decision-maker in Water Beds, inc., could have simply stopped Water Beds, inc. from making payments on the obligation after the first $50,000.00 was paid and [the wife] would have no recourse because she could not pursue him (his liability being limited to $50,000.00) nor Water Beds, inc. (not a party to the contract and therefore not liable). This interpretation does violence to the agreement of the parties and is not reflective of their intent.

years, and that the issue whether the husband is liable individually to the wife for breach of the employment promise is a matter that requires resolution of disputed, material facts.

III.

For these reasons, I would reverse the judgments in Samuel I and Samuel II and remand for a trial on the issues raised by the motion for judgment.